## Commonwealth v. Nolan.

(Decided September 21, 1920.)

Appeal from Harlan Circuit Court.

1. Municipal Corporations—Use of Motor Vehicles—Ordinances.—
A city of the fourth class may, by virtue of a statute giving it "exclusive control and power over its streets, roadways, sidewalks, alleys," etc., and in the exercise of its police powers, through its city council, pass and enforce an ordinance restricting the use to travel in one way or direction by motor vehicles, of a street so narrow as to make its use by such vehicles in traveling both ways in the customary manner unusually dangerous to them, their occupants, or to other vehicles and occupants, or pedestrians on such street.

2. Municipal Corporations—Use of Motor Vehicles.—Such an ordinance does not violate the provisions of the Constitution forbidding class or discriminatory legislation, nor is it unreasonable or oppressive, merely because it affects solely the operation of automobiles and other motor vehicles and fails to regulate the operation of all other vehicles using the same street.

3. Municipal Corporations—Use of Motor Vehicles—Class Legislation.—Class legislation, discriminating against some and favoring others, is prohibited. But legislation, which in carrying out a public purpose is limited in its application if, within the sphere of its operation it affects alike all persons similarly situated, will not be declared invalid.

4. Municipal Corporations—Motor Vehicles—Use of Highways.—As motor vehicles furnish a suitable mode of travel and transportation, not necessarily inconsistent with the proper use of public highways by others, such highways are open to their use; but as they have introduced a new element of danger to travelers on the highways, this fact necessarily compels a higher degree of care from those who operate them, than is required of those in control of vehicles drawn by horses. For the same reason, in exercising their authority to regulate the operation of motor vehicles on public highways, the state or municipality must necessarily put them in a class in which other unlike vehicles are not, and cannot be, included.

J. B. CARTER for appellant.

ZEB A. STEWART for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Oscar Nolan, was arrested, tried, convicted and, by way of punishment, subjected to a fine of $5.00 in the police court of the city of Harlan under a

warrant issued therefrom charging the violation by him of an ordinance of that city confining the operation of all motor vehicles on one of its streets known as Central street, between Main and First streets, to travel in one direction. Relying on the alleged unconstitutionality of the ordinance and the amount of the fine being, on that issue, immaterial, appellee took an appeal from the judgment of the police court to the Harlan circuit court. In the latter court the right of trial by jury was waived and by agreement of the parties the law and facts submitted to the court, the trial resulting in a judgment of acquittal on the ground, as recited therein, that the ordinance is unconstitutional, because of its applicability to motor vehicles alone, which, in the opinion of the trial court, makes it discriminatory and oppressive as to that class of vehicles. Counsel for the Commonwealth being dissatisfied with the construction thus given the ordinance by the circuit court, prosecutes in its name the present appeal to this court, for the purpose of obtaining its construction of the ordinance and an authoritative declaration from it of the law of the case.

The ordinance in question, which admittedly was passed or adopted by the city council as required by law, is in words and figures as follows:

"Whereas motor vehicles have become very numerous in the city of Harlan, Kentucky; and, whereas, Central street in said city from Main street to First street is less than 24 feet in width from curb to curb, which entails great danger to people in operating and running motor vehicles on said street. Now therefore be it ordained by the city council of the city of Harlan, Kentucky, that all persons running or operating motor vehicles of any kind on Central street between Main street and First street, shall only operate and run said vehicles in one direction, which shall be east from Main street to First street; and any person who shall run or attempt to run any kind of said motor vehicle west on said Central street, between Main and First streets, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than $5.00, nor more than $15.00; and if they fail to pay or replevy said fine, shall be confined in the county jail of Harlan county and be placed at hard labor, until said fine, and costs, has been paid."

Appellee's violation of the ordinance for which he was arrested and tried under the warrant is admitted; and it is conceded, both by him and counsel for the Commonwealth, that the sole object of his prosecution there-

for was and is to test the constitutionality of the ordi-
nance. This, therefore, is the only question to be de-
termined on this appeal.

It appears from the record that Central street, the
use of which between Main and First streets by motor
vehicles is restricted by the ordinance to travel in one
direction, viz.: eastwardly from Main street, only runs
from Main street to First street, is but 210 feet in length
and 24 feet in width, exclusive of its pavements, while all
other streets of Harlan, which is a city of the fourth
class, are much longer and wider; indeed, of the cus-
tomary length and width common to cities of its size and
population. Main and First streets run in parallel lines
north and south, the fromer leading from the railroad
station into and through Harlan, and being the principal
business street of that city. Central street runs east and
west, its west end intersecting Main street and its east
end First street. Appellee is engaged in the business
of transporting for hire for an express company express
packages and for others sundry other articles consisting
of baggage and merchandise, not handled by the express
company, to and from the railroad station and all other
points in Harlan, by hauling same in a motor truck of
which he is the owner and operator. Appellee's office
or place of business is on First street about 25 feet north
of Central street, and in order to obey the ordinance in
going from his place of business to collect packages or
other freight on Central street by traveling it with his
motor truck eastwardly from Main street to First street,
he must reach Main street by way of Clover, Short or
Mound streets, all of which parallel Central street and
intersect Main and First streets, the distance from his
place of business on First street to Main at its inter-
section with Central by way of Clover, being about 600
feet, by way of Short 400 feet and by way of Mound 350
feet. While doubtless it would be somewhat inconvenient
for appellee in proceeding from his office in his motor
truck to collect packages and freight on Central street, to
go this increased distance to its intersection with Main
street in order to travel it from the latter street east-
wardly, it is not made to appear that as much or greater
use is not made of Central street by appellee's motor
truck in delivering packages and other freight thereon
hauled directly from the railroad station, ordinarily
rendering more convenient its entrance from Main street,
the usual and direct route of travel for all vehicles from
the railroad station. Moreover, it appears from the

agreed statemnet of facts that a great many automobiles and other motor vehicles, besides that of appellee, are owned and operated in Harlan, and it is not made to appear that any of the owners thereof are subjected by the ordinance to the alleged inconvenience complained of by appellee. At any rate, a municipal ordinance designed to protect the safety or health of the public and necessary to its protection, will not, by the courts, be declared invalid merely because its enforcement will subject to inconvenience a single person, a considerable number or an entire community of persons. In such case the good of the public will be regarded as of paramount consideration. The ordinance itself expresses the object of its passage in declaring in the preamble that it was made necessary because of the many motor vehicles owned in Harlan and the fact that the unusual narrowness of Central street renders its use by such vehicles dangerous to those operating them thereon. The preamble might well have added a further reason for the passage o'/ the ordinance as self evident as the one mentioned, viz.: the danger to other kinds of vehicles, those driving them and pedestrians generally using Central street, from the travel and frequent passing thereon of motor vehicles going both east and west at the same time; for a collision that might occur between a motor vehicle and one drawn by a horse, or between the motor vehicle and a pedestrian, would, by reason of the greater weight and speed of the former, more likely result in injury to the other vehicle, its occupants, or the pedestrian, than to the heavier vehicle or those occupying it.

While the introduction in recent years of automobiles and other motor vehicles as a means of conveyance and transportation and the many injuries to persons and property from their use have resulted in a multitude of judicial decisions, many of them conflicting in expression and effect, the principles they announce are in the main but rules derived from the common law, or from statutory enactments specially designed to regulate their operation. The numerous cases on the subject seem to hold that as motor vehicles are to be regarded as furnishing a suitable and convenient mode of travel and transportation, not necessarily inconsistent with the proper use of public highways by others, such highways are open to their use, as to other vehicles. But to this we would add, that as such vehicles have introduced a new element of danger to travelers on the highway, this fact necessarily compels a higher degree of care from those

who operate them, than is required of those in control of vehicles drawn by horses.

While an automobile or other motor vehicle may not generally be regarded an inherently dangerous machine or agency, one court has said that "while in operation it (the automobile) should be deemed a dangerous instrument demanding great care on the part of the possessor."

In Weil v. Kreutzer, 134 Ky. 563, 24 L. R. A. (N. S.) 557, this court said of the automobile:

"The possession of the deadly and dangerous instrument always entails great care upon the possessor. . . . The degree of care one must use always bears a direct ratio to the degree of injury which would probably be caused by negligence. When one comes through the highways of a city with a machine of such deadly force as an automobile, it is incumbent upon the driver to use great care that 'it be not driven against or over pedestrians. An automobile is nearly as deadly as, and much more dangerous than, a street car or even a railroad car. These are propelled along fixed rails, and all that the traveling public has to do to be safe is to keep off the tracks; but the automobile with nearly as great weight and more rapidity can be turned as easily as an individual, and for this reason is far more dangerous to the traveling public than either the street car or the railway train."

The legislature of this state under its police power has enacted a statute which regulates the manner of operating motor vehicles upon the highways of the state and streets of its cities by requiring their owners to obtain of it a license and display the number of such license and the horse power of its propelling machinery on the vehicle; also by prescribing the qualifications of those seeking to operate such vehicles; rules regulating the speed at which such vehicles shall be operated; the giving of signals and carrying of lights by them to convey warning of their presence or approach, and such other reasonable regulations as may be needful for the safety of all persons entitled to the use of the streets and highways of the state. So it may be said that the legislature of this state has exercised the power of regulation mentioned. In addition, it may be said that the legislature of this state has duly conferred upon the municipal authorities of its cities and towns such powers as are necessary to regulate the use of their streets by motor vehicles; such authority as appertains to Harlan, a city of the fourth class, being conferred by Kentucky Stat-

utes, section 3562, which, among other things, declares that its city council shall have "exclusive control and power over the streets, roadways, sidewalks, alleys," etc., of the city. And this power the council has exercised and had the right to exercise by the passage of the ordinance in question. Certainly the power thus given by the statute, *supra,* in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of the citizens. Christy v. Elliott, 216 Ill. 31; People v. Snider, 139 Mich. 673.

Whether such an ordinance is valid or otherwise, has not been passed on in this jurisdiction, but it cannot be unconstitutional as being special legislation or discriminatory, merely because it legislates solely upon the operation of motor vehicles and fails to regulate the operation of all other vehicles using the same street. Christy v. Elliott, 216 Ill. 31; Mahoney v. Maxfield, 102 Minn. 377. Indeed the right of the state or municipality to regulate the operation of motor vehicles may be said to be universally recognized, and that this must be done by putting them in a class in which other vehicles are not included, arises out of the new elements of danger peculiar to their structure, mechanism and use. Objection to the constitutionality of such state or municipal regulation on the ground that it is class legislation or discriminatory in its operation, has repeatedly been declared to be without merit. State v. Mayo (Maine), 75 Atl. 295, 26 L. R. A. (N. S.) 502; Fifth Avenue Coach Co. v. New York, 194 N. Y. 19, 21 L. R. A. (N. E.); and authorities cited in the notes to each. Complaints that such legislation is unreasonable and oppressive are also dealt with by the foregoing authorities and others and likewise held to be without merit.

In State v. Mayo, *supra,* a municipal ordinance regarding the "use of roads in the town of Eden," and excluding the operation of automobiles on certain of them, was the subject of attack. In sustaining the validity of the ordinance and constitutionality of the act authorizing its passage, the court held: "The legislature may, without impairing the constitutional right to equal protection of the laws, or the right of pursuing happiness, authorize a municipal corporation to close to automobiles dangerous streets the use of which by such machines may endanger the lives of their occupants, or

of those driving horses upon the streets." And further, that "forbidding the use of automobiles on highways constructed over deep ravines and along the edges of cliffs to protect the lives of the occupants and of those attempting to use horses along such roads, is reasonable."

In Commonwealth v. Kingsbury, 199 Mass. 542, 127 Am. St. Rep. 513, it was held that a municipal corporation might, by ordinance, exercise the power delegated by the legislature, "to make special regulations . . . as to the use of automobiles and motorcycles on particular roads, including their complete exclusion therefrom, it being a valid exercise of the police power."

In Barbier v. Connolly, 133 U. S. 27, the Supreme Court, Mr. Justice Field writing, said:

"Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application if, within the sphere of its operation, it affects alike all persons similarly situated, is not within the amendment."

The authorities we have cited and commented on seem to us to be conclusive of the questions under consideration, and while we do not hold that motor vehicles may be wholly excluded from the use of any road used by other vehicles, we are not inclined to disagree with the conclusions they otherwise express. Manifestly, there can be nothing unreasonable or oppressive in an ordinance which confines the use of a single dangerous street by such vehicles to travel one way. As in our opinion the ordinance of the city of Harlan here attacked is not open to the objections made to its constitutionality by appellee, the circuit court erred in holding it invalid. Wherefore the judgment is reversed and case remanded to the circuit court for a new trial and other necessary proceedings consistent with this opinion. Whole court sitting.