# Richmond.

## STANDARD OIL COMPANY V. COMMONWEALTH.

### November 17, 1921.

1. ORDINANCES—*Resolution of Board of Supervisors—Certainty.*— An ordinance of a regulatory nature must be clear, certain, and definite, so that the average man may, with due care, after reading the same, understand whether he will incur a penalty for his action or not, and, if not of this character, it is void for uncertainty.

2. STREETS AND HIGHWAYS—*Obstruction—Action by Municipality or County.*—Municipalities have the power to maintain such actions at law or in equity as may be appropriate to prevent and abate nuisances obstructive of highways, or rendering them useless.

3. STATUTES—*Ordinances—Certainty—Test.*—A statute or ordinance, to be valid, must by its language, fairly construed and with reference to common-law definitions (if the act denounced as a crime was punishable at common law), supply the standard by which the guilt of the accused person is to be determined. If the statute does not thus supply such standard, it is invalid for vagueness and uncertainty, but if it does, it is valid.

4. STREETS AND HIGHWAYS—*Obstruction as Nuisance—Anything Making Highway Dangerous to Traveler.*—That · obstructions or encroachments upon a highway *per se* constitute a public nuisance, even when they do not actually operate as an obstruction to travel, is well settled, and it follows that the same is true of anything which interferes unreasonably or unnecessarily with its use by the public, or which makes the highway more dangerous for travelers thereon:

5. STREETS AND HIGHWAYS—*Validity of Act Authorizing Special Legislation by Boards of Supervisors.*—Code of 1919, section 2013, authorizing boards of supervisors to enact special legislation deemed expedient to protect the highways from encroachment or obstruction, or from any improper or exceptionally injurious use thereof, is authorized by section 65 of the Constitution of 1902, and is valid.

6. STREETS AND HIGHWAYS—*Resolution of Board of Supervisors— Certainty—Heavy Hauling in Wet Weather.*—Under the author-

ity of section 2013 of the Code of 1919, a board of supervisors by resolution forbade the use of the roads when so wet as to be "materially damaged" thereby to certain specified heavy vehicles and all heavily laden wagons or trucks.

*Held:* That there was nothing indefinite about the resolution in so far as it designated the prohibitive vehicles, and the time and circumstance under which the use of such vehicles was prohibited was clearly indicated.

7. STREETS AND HIGHWAYS—*Resolution of Board of Supervisors— Certainty—Heavy Hauling in Wet Weather.*—In order to convict under a resolution of a board of supervisors, pursuant to Code of 1919, section 2013, forbidding the use of the roads to heavy vehicles when so wet as to be "materially damaged" thereby, it must be shown by the evidence that there was an improper and exceptionally injurious use of the highway under the circumstances indicated.

8. · INSTRUCTIONS—*Reasonable Doubt—Repetition.*—Where in three instructions given the court fully protected every right of the defendant to be acquitted if there was any reasonable doubt of his guilt, it was unnecessary to repeat that doctrine in an instruction which was refused, and the error, if any, was harmless.

9. STREETS AND HIGHWAYS—*Using Heavy Vehicles on Wet Highway —Use by Other Persons.*—Accused, charged with the violation of a resolution of a board of supervisors against the use of highways by heavy vehicles when so wet as to be "materially damaged" thereby, requested an instruction to the effect that if the jury believed that other reasonable persons used the roads at the time defendant was charged with using them, with wagon or trucks of similar kind and weight, defendant had the right to assume that such use was proper and would not be guilty.

*Held:* That the refusal of this instruction was not erroneous, as defendant's guilt or innocence did not depend upon what other reasonable persons did. It must determine for itself at its peril whether or not it would use the road when it was wet.

Error to a judgment of the Circuit Court of Rockbridge county.

*Affirmed.*

The opinion states the case.

*Hugh A. White* and *Eppa Hunton, Jr.,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

By an, act approved March 13, 1912 (Acts 1912, p. 503), Code 1919, section 2013, it is provided that "the boards of supervisors of the several counties of the Commonwealth shall have power to enact such special and local legislation in their respective counties not in conflict with the Constitution and the general laws of the Commonwealth as they may deem expedient to protect the public roadways and bridges of the said counties from encroachment or obstruction, or from any improper or exceptionally injurious use thereof." By authority of that statute the board of supervisors of Rockbridge county adopted a resolution declaring that, "it shall be unlawful for any person, firm, or corporation to operate or cause to be operated over the highways of Rockbridge county any engine, threshing machine, logging or lumber wagons, heavy machinery, wagons, or tanks, automobile trucks and all heavily laden wagons or trucks, at any time at which the said roads are wet to a sufficient extent to be materially damaged by such hauling or use; provided, however, that this enactment shall not be construed to prevent the hauling of farm produce."

The Standard Oil Company was charged with a violation of this resolution, in that it operated a heavily loaded truck over a certain road while it was so wet as to cause the highway to be materially damaged by such hauling or use. After a conviction before a justice of the peace, an appeal was taken to the Circuit Court of Rockbridge county, and upon a jury trial the accused was again convicted and subjected to a fine of $50, of which it is here complaining.

[1] The point chiefly relied on was in the trial court first

raised upon the demurrer of the defendant and its motion
to dismiss the warrant, upon the ground that the resolution
of the board of supervisors upon which the prosecution
was based was unconstitutional and void for uncertainty
in its description and definition of the alleged crime.    This
contention is based upon the general rule that an ordinance
of a regulatory nature must be clear, certain and definite,
so that the average man may, with due care, after reading
the same, understand whether he will incur a penalty for
his action or not, and if not of this character it is void for
uncertainty.

Many cases may be cited to support this rule, and we
do not question its validity where it is properly applicable.
It may be also conceded that there are instances in which
it has been applied by the courts to statutes bearing some
resemblance to that here involved.    It is, however, also
easy to cite cases in which other courts have refused to
apply it to statutes equally indefinite as that here criticised.

It has long been held that to obstruct or unlawfully in-
jure a public highway is a nuisance—a serious encroach-
ment upon the public right.

In 3 Salk. 183, we find this precedent in *Egerly's Case:*
"Information against a common carrier, setting forth that
no wagon ought to carry more than 2,000 weight; and that
the defendant used a wagon with four wheels, and *cum
inusitato numero equorum,* in which he carried 3,000 or
4,000 weight at one time, by which he spoiled the high-
way leading from Oxford to London (viz.), at Lobb-lane, in
the parish of Hosely; this was adjudged good, though it
was laid generally at Lobb-lane, without showing how many
perches in length; because the nuisance was alleged, for
all the way leading from Oxford to London, and Lobb-lane
was mentioned only for the venue; and though there was
no particular measure expressed how much of the way was
spoiled, it shall be intended all Lobb-lane was spoiled; like-

53

wise, though it said that he went *inusitato numero equorum,* without setting forth what number, yet the information is good, because it was the excessive weight which he carried that made the nuisance."

In *Congreve* v. *Smith,* 18 N. Y. 79, it is said, incidentally, that the general doctrine is that the public are entitled to the use of a highway in the condition in which they placed it, and whoever without sufficient authority materially obstructs it is guilty of a nuisance.

[2] The general rule is that municipalities have the power to maintain such actions at law or in equity as may be appropriate to prevent and abate nuisances obstructive of highways, or rendering them useless. *Stearns County* v. *St. Cloud, M. & A. R. Co.,* 36 Minn. 425, 32 N. W. 91; *Hooksett* v. *Amoskeag Mfg. Co.,* 44 N. H. 105; *Troy* v. *Cheshire R. Co.,* 23 N. H. 83, 55 Am. Dec. 177; *Springfield* v. *Connecticut River R. Co.,* 4 Cush. (Mass.) 63; *Easton & A. R. Co.* v. *Greenwich Twp.,* 25 N. J. Eq. 565; *Rio Grande R. Co.* v. *Brownsville,* 45 Tex. 88; *Philadelphia* v. *Thirteenth & Fifteenth Sts. Pass. R. Co.,* 8 Phila. (Pa.) 648, 39 L. R. A. 650, note.

These cases relating to statutes which were attacked upon the ground that they were vague and indefinite are pertinent:

In *State* v. *Ayers,* 49 Ore. 61, 88 Pac. 653, 10 L. R. A. (N. S.) 992, 124 Am. St. Rep. 1036, it is held that naming the offense is not necessary to warrant its punishment, where it is described by statute sufficiently to justify a resort to the common law for its definition, although no common law offenses are recognized in that particular State. There, under a statute which provided for the punishment of any act which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to the public morals, it is held that the court was competent to determine what acts come within the description. The particular

offense charged in that case was the habitual sale of pools on horse races, at a track where many persons were assembled to witness the races, and this was construed to be an act which grossly disturbed the public peace and openly outraged public decency, within the meaning of the statute referred to, and the accused was convicted.

*Katzman* v. *Commonwealth,* 140 Ky. 124, 130 S. W. 990, 30 L. R. A. (N. S.) 519, 140 Am. St. Rep. 359, holds that a statute forbidding druggists to sell poisons at retail, except under certain conditions, one of which is that they shall satisfy themselves that they are to be used for legitimate purposes, is not invalid for not defining the meaning of the words "retail" and "legitimate purposes." Whether or not a druggist, in selling opium without a prescription, used reasonable care to satisfy himself that it was obtained for a legitimate purpose, as required by statute, was held to be a question for the jury. In that case, in reply to the same argument which is made here, we find this: "In the argument in support of the objection mentioned, it is said that the legislature should have defined the meaning of the words 'retail' and 'legitimate purposes,' so that a druggist might know what quantity would constitute a sale by retail, and what would or would not be considered a sale for legitimate purposes; and so that there could not be two opinions as to what these words mean when different courts or juries came to pass upon questions involving a violation of the statute. It may be admitted that although the meaning of the words 'retail' and 'legitimate purposes,' as used in the statute, are reasonably well understood, it is nevertheless possible that there might be difference of opinion as to whether in a given state of case the sale of a drug was by retail or for a legitimate purpose, and it is possible that, in administering this statute, it may occasionally happen that a druggist will be accused who claims not to

know what constitutes a sale by retail, or what is a legitimate use of opium; and it is also possible that different trial courts and juries may not always be harmonious in the conclusions reached upon this point, but the fact that there may be occasional doubt or want of agreement on this question cannot be allowed to invalidate the statute. If this rule obtained, many penal statutes that have stood unquestioned for years and have been often enforced would be held invalid. There are numerous statutes in existence creating and describing offenses, the enforcement of which often brings into prominent notice a question concerning the meaning of words in the law about which different persons might reach a different conclusion. In the trial of many criminal cases there are, of necessity, submitted to the jury issues involving the meaning of certain words upon which depends the guilt or innocence of the accused; and with the court, or jury, as the case may be, is left the decision whether or not the law under which the prosecution is pending has been violated. It would, of course, be extremely desirable if every penal statute could be made so plain as not to leave any doubt as to its meaning, and so intelligible as that every person could, by reading it, at once decide what he might with safety do under it. But this ideal condition is not attainable. It would not be at all practicable to define in every statute the meaning of controlling words in it that there may be difference of opinion concerning, when it is attempted to apply them to a given state of facts. To do this would extend to unreasonable length almost every statute that creates and describes an offense, and would also complicate and confuse the administration of the criminal law, as the definitions would often be as uncertain as the thing defined. Every penal statute should be given a reasonable construction—one that will effectuate the legislative intent in its enactment—and, if it describes the offense in language that can be understood

by persons of ordinary intelligence, it will not be declared invalid on the ground of uncertainty. * * * A little common sense, as well as legal learning, must be used in the practical administration of the law; and it is not essential that a statute shall be so elaborate in its details as to attempt to meet every possible state of fact that may arise under it."

In *Stewart* v. *State,* 4 Okl. Crim. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505, it is held that a statute which provided that "every person who willfully and wrongfully commits any act * * * which grossly disturbs the public peace or health, * * * although no punishment is expressly prescribed therefor by this Code, is guilty of a misdemeanor," is not void for uncertainty; and that whooping and yelling and uttering loud and vociferous language are acts prohibited thereby, if they grossly disturb the public peace; and it is said that the legislature, in creating an offense, may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result. There being no common law crimes in Oklahoma, it is held that where the legislature creates without defining an offense which was a crime under the common law, the common law definition of the crime will be adopted.

Several recent cases in the Supreme Court of the United States illustrate and follow the same liberal rule of construction.

In *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 108, 29 Sup. Ct. 226, 53 L. Ed. 429, this is said with reference to the Texas statute relating to monopolies and combinations in restraint of trade: "It is further insisted that the acts in question are so vague, indefinite and uncertain as to deprive them of their constitutionality, in that they punish by forfeiture of the right to

do business, and the imposition of penalties, under provisions of an act which do not advise a citizen or corporation prosecuted under them of the nature and character of the acts constituting a violation of the law. These objections are found in the words of the act of 1899, denouncing contracts and arrangements 'reasonably calculated' to fix and regulate the price of commodities, etc. And, in the act of 1903, acts are prohibited which 'tend to accomplish' the prohibited results. It is insisted that these laws are so indefinite that no one can tell what acts are embraced within their provisions. In support of this contention it is argued that laws of this nature ought to be so explicit that all persons subject to their penalties may know what they can do, and what it is their duty to avoid. And reference is made to decisions which have held that criminal statutes should be so definite as to enable those included in its terms to know in advance whether an act is criminal or not. (Citing cases.)   * * * But the Texas statutes in question do not give the broad power to a court or jury to determine the criminal character of the act in accordance with their belief as to whether it is reasonable or unreasonable, as do the statutes condemned in the cases cited." The statutes are held to be valid as sufficiently definite and certain in their definition of the crime denounced.

*Nash* v. *United States*, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232, was a prosecution for a criminal violation of the Sherman anti-trust act, and it was held that there is no such vagueness in the anti-trust act of July 2, 1890 (26 Stat. at L. 209, chap. 647, U. S. Comp. Stat. 1901, p. 3200 [U. S. Comp. St. §§ 8820-8823, 8827-8830]), as to render it inoperative on its criminal side, because only such contracts and combinations are within the act as, by reason of intent, or of the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition, or unduly obstructing the course of trade.

In *Fox* v. *Washington,* 236 U. S. 273, 35 Sup. Ct. 383, 59 L. Ed. 574, it is held that a statute of the State of Washington (Code, sec. 2564) which makes criminal the editing of printed matter tending to encourage and advocate disrespect for law, does not violate the United States Constitution, fourteenth amendment, as being an unjustifiable restriction of liberty, and too indefinite for a criminal statute, where the highest State court, by implication at least, reads the statute as confined to encouraging an actual breach of the law, and in the case at bar has merely construed it as embracing an article encouraging and inciting a persistence in what would be a breach of the State laws against indecent exposure.

In *Miller* v. *Strahl,* 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364, it is held that there is no uncertainty in the requirement of the Nebraska Rev. Stat. 1913, sec. 3104, that innkeepers, in case of fire, shall give notice of the same to all guests and inmates at once, and shall do all in their power to save such guests and inmates as to render the statute invalid under the fourteenth amendment of the United States Constitution as wanting in due process of law, and this is said: "The argument is that the requirement 'to do all in one's power' fails to inform a man of ordinary intelligence what he must or must not do under given circumstances. Rules of conduct must necessarily be expressed in general terms and depend for their application upon circumstances, and circumstances vary. It may be true, as counsel says, that 'men are differently constituted,' some being 'abject cowards, and few only are real heroes;' that the brains of some people work 'rapidly and normally in the face of danger while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of 'all in one's power' as determined by the circumstances." And it

is said that the case falls within the rule stated in *Nash* v. *United States, supra.*

In *Omaechevarria* v. *Idaho,* 246 U. S. 346, 38 Sup. Ct. 323, 62 L. Ed. 763, under a statute making criminal the grazing of sheep on the federal public domain upon ranges previously occupied by cattle, or usually occupied by cattle raisers, it was held that the provisions are not so indefinite as to render the statute repugnant to the constitutional guaranty of due process of law, although it fails to provide for the ascertainment of the boundaries of a range, or for determining what length of time is necessary to constitute a prior occupation, a usual one within the meaning of the statute,— especially since it is provided by section 6314, that in any crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence.

The recent case of *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 41 Sup. Ct. 300, 65 L. Ed. —, is relied upon by the plaintiff in error here as sustaining a contrary view; but the opinion in that case expressly refers to the previous cases just cited herein and their authority is conceded. The *Cohen Case* held the Lever act of August 10, 1917, section 4 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §3115-1/8ff), as re-enacted by the act of October 22, 1919, section 2 (41 Stat. 298), which undertook to punish criminally any person who willfully makes "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," violative of the fifth and sixth amendments of the United States Constitution, which require an ascertainable standard of guilt fixed by Congress rather than by courts and juries, and secure to accused persons the right to be informed of the nature and cause of accusations against them. A careful reading of the opinion demonstrates that the court had no intention of impairing the weight of its previous decisions upon this subject.

[3] The true test, as we understand it, may be thus ex-

pressed. The statute, to be 'valid, must, by its language, fairly construed and with reference to common law defini-tions (if the act denounced as a crime was punishable at common law), supply the standard by which the guilt of the accused person is to be determined. If the statute does not thus supply such standard, it is invalid for vagueness and uncertainty; but if it does, it is valid. Mr. Chief Justice White said, with reference to the section of the Lever act considered in the case of *United States* v. *Cohen, supra:* "The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question; that is, whether the words, 'That it is hereby made unlawful for any person will-fully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' constituted a fixing by Congress of an ascertainable stan-dard of guilt, and are adequate, to inform persons accused of violation thereof of the nature and cause of the accusa-tion against them. That they are not, we are of opinion so clearly results from their mere statement as to render elaboration on the subject wholly unnecessary. Observe that the section forbids no specific or definite act. It con-fines the subject matter of the investigation which it au-thorizes to no element essentially inhering in the transac-tion as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee, and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below in its opinion to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury. And that this is not a mere abstraction finds abundant demon-stration in the cases now before us; since in the briefs in

these cases the conflicting results which have arisen from the painstaking attempts of enlightened judges in seeking to carry out the statute in cases brought before them are vividly portrayed."

[4] Applying this test to the statute and resolution here involved, we are of opinion that they are valid. That obstructions or encroachments upon a highway *per se* constitute a public nuisance, even when they do not actually operate as an obstruction to travel, is well settled, and it follows that the same is true of anything which interferes unreasonably or unnecessarily with its use by the public, or which makes the highway more dangerous for travelers thereon. 13 R. C. L. 186; *Commonwealth* v. *Stodder,* 2 Cush. (Mass.) 562, 48 Am. Dec. 679.

[5] That the act here involved, authorizing boards of supervisors to enact special legislation deemed expedient to protect the highways from encroachment or obstruction, or from any improper or exceptionally injurious use thereof is valid cannot be doubted. It is authorized by the Constitution, section 65, and the statute based thereon was reviewed by this court in *Polglaise's Case,* 114 Va. 850, 76 S. E. 897. In the course of the opinion in that case, it is said: "Upon reason and authority, the matter of regulating the amount of loads to be hauled over the public highways is generally recognized as properly within the discretion of the authorities charged by law with the care and maintenance of the public highways; and it is likewise settled that when any such regulation, within the scope of the authority of the law-making power, has been passed, that the *prima facie* presumption is that the regulation is reasonable and proper, and in order to warrant the court in coming to a different conclusion, there must be evidence introduced showing that in the particular case the discretion granted to the legislative body has been abused, and the rights of individuals taken from them."

Other recent and instructive cases from other jurisdictions relating to the general power of public authorities to restrict the use of highways and to exclude certain classes of vehicles therefrom are *State* v. *Mayo,* 106 Me. 62, 75 Atl. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512; *Fifth Ave. Coach Co.* v. *New York,* 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695; *Commonwealth* v. *Kingsbury,* 199 Mass. 542, 85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513; *Commonwealth* v. *Nolan,* 189 Ky. 34, 224 S. W. 506, 11 A. L. R. 203.

[6] We must look to the statute and the resolution based thereon then to ascertain whether they afford the standard by which the guilt or the innocence of the person charged with the offense is to be determined. We find therefrom that certain specified heavy vehicles, and all heavily laden wagons or trucks, are forbidden the use of the roads under certain conditions. There is certainly nothing indefinite about the resolution in so far as it designated the prohibited vehicles. The question presented to the court or jury in a given case is whether or not the accused person has operated such a vehicle. This is a question of fact to be determined from the evidence like any other fact, not resting in the varying discretion or opinion of the jury, but depending upon the evidence. In order to convict, the vehicle must be of the character described and prohibited.

[7] Then, the time and circumstances under which such use is prohibited is clearly indicated—that is, to justify conviction, it must be shown that the road was wet to a sufficient extent to make such use at that time exceptionally injurious to the highway, and hence improper. Thus the statute and resolution clearly point out the other essential fact which must be established by evidence before there can be a conviction thereunder. The words "materially damaged," used in the resolution of the board, are in instruction 5 construed properly by the court to be equivalent

to the words used in the statute, so that in order to convict it must be shown by the evidence that there was an improper and exceptionally injurious use of the highway under the circumstances indicated.

So that we have in the statute itself and in the resolution the standards by which the guilt or the innocence of accused persons is to be determined. Thus construed they are not as indefinite as are those ordinances which provide penalties for disorderly conduct. While it is said that disorderly conduct has a common law meaning, this meaning is so indefinite as to require the submission of the evidence to the jury in order to determine the facts. So in homicide, the question is not whether the accused person thought he knew whether he was committing the crime of involuntary manslaughter or of murder in the first or second degree. If he commits a homicide, he must take his chances with the jury. The jury determines the degree of his guilt, although he may feel very sure that they are mistaken. So here, the accused person who uses the prohibited vehicle upon a clay road which is wet must determine at his peril whether it is so wet as to make his use of it then exceptionally injurious to the highway, and thereafter he must accept the judgment of the jury as to whether he is innocent or guilty of the offense charged. There is nothing unusual in all this, and the language of the resolution, thus construed, sufficiently fixes the standard. The jury are not left free to exercise their own untrammeled judgment, but must determine the issue presented to them from the evidence. Like any other case, if the evidence fails, the accused is acquitted. The criminality of the act here denounced does not depend upon whether a jury may think it reasonable or unreasonable. The statute describes the misdemeanor with reasonable definiteness and certainty, though in a given case it may be difficult to show the guilt of the accused beyond a reasonable doubt, because from

the evidence there may be fair differences as to whether the essential facts necessary to constitute the crime have been proved. There is no fair doubt, however, as to the misdemeanor which is prohibited.

It follows from what we have said that we think the judgment of the trial court overruling the demurrer and motion to dismiss is without error.

The defendant complains of the failure of the court to give instructions 2 and 4.

Instruction 2 reads thus: "The jury is further instructed that the mere use of the roads while they are wet or muddy is not sufficient, but you must further believe that the roads were in such condition that beyond a reasonable doubt they would be materially damaged as mentioned in instruction No. 1."

[8] It is sufficient to say as to this, that the three instructions given by the court fully protected every right of the defendant to be acquitted if there was any reasonable doubt of its guilt, and it was unnecessary to repeat that doctrine in the instruction which was refused. That error, if any, was harmless.

[9] Instruction 4 was to the effect that if the jury believed from the evidence that other reasonable persons subject to the law involved used the roads at the time the defendant was charged with using them, and with wagons or trucks of similar kind and weight as used by the defendant, then the defendant had the right to assume that its use was proper and would not be guilty. This instruction was properly refused, because the jury had been sufficiently instructed already in the other three instructions which were given, and for the additional reason that it is not true that under such circumstances the defendant's guilt or innocence depends upon what other reasonable persons do. He must at his peril determine for himself whether or not he will use the road when it is wet with his heavy or heavily loaded

vehicle, and the jury must in each case determine whether or not such use was improper and exceptionally injurious in violation of the resolution; and the fact that other reasonable persons may have also violated the law at the same time does not entitle the accused to an acquittal.

The evidence introduced by the Commonwealth is sufficient to support the verdict, and the trial court committed no error in refusing to set it aside.

*Affirmed.*