# Richmond

## ROUNTREE CORPORATION v. CITY OF RICHMOND.

January 10, 1949.

Record No. 3456.

Present, All the Justices.

*Sands, Marks & Sands,* for the plaintiff in error.

*J. Elliott Drinard* and *W. S. Cudlipp, Jr.*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The Rountree Corporation was convicted upon three warrants of violating the plumbing code of the city of Richmond. The validity and the constitutionality of certain sections of the plumbing code are challenged upon this writ of error. The pertinent sections are, in part, as follows:

"Section 81 of Chapter 27 of the Richmond City Code of 1937, as amended by Ordinance approved March 14, 1942:

"Certificate of Proficiency. (a) Every person who desires to engage in the business of a plumbing contractor in the City of Richmond shall make application in writing to the Director of Public Health for a certificate of proficiency to engage in such business and every firm or corporation that desires to engage in such business in the City of Richmond shall make such application by a duly authorized representative. Every such person and representative shall appear in person before the Plumbers' Examining Board hereinafter provided for and demonstrate their practical and technical knowledge, proficiency and capacity to lay out and supervise plumbing work. If upon such examination such applicant shows himself competent to engage in such business it shall be the duty of the Director of Public Health to issue to such applicant a certificate to that effect which shall entitle such person and the firm or corporation represented by such representative to obtain from the Collector of City Taxes a license to engage in the business of a plumbing contractor in the City of Richmond upon payment of the license taxes prescribed by law therefor. Every such certificate issued to a firm or corporation shall be valid as long as the representative who applied therefor on behalf of such firm or corporation is in the employ or actively engaged in the business of such firm or corporation and in the event such representative leaves the employ of such firm

or corporation and becomes no longer actively engaged in such business, such certificate shall forthwith become null and void and such firm or corporation shall not be authorized to engage in such business until some other representative of such firm or corporation conforms to the provisions of this section.

 \*  \*  \*  \*  \*  \*

"(e) No person other than a licensed journeyman plumber shall be allowed to make any connection with any sewer, drain, soil, waste, or vent pipe, or any gas or water pipe, or any pipe connected therewith. No plumbing contractor shall employ or authorize any unlicensed person to do any work for which a license is required of a journeyman plumber."

Another section which is involved is, in part, as follows:

"Section 82 of Chapter 27 of the Richmond City Code of 1937, as amended by Ordinance approved March 14, 1942:

"82. Applicants to make connections; permits; plans and specifications. (a) No plumber shall be allowed to make any connection with any sewer or any pipe connected therewith, or any addition or alterations in the sanitary arrangements in any building without first having made written application to the inspector of plumbing and receiving a permit to do so; and it shall be the duty of the said inspector to keep a proper record of all permits issued, or other suitable records as the Director of Public Health may require. In order to defray the expense of checking plans, issuing permits and making inspection of plumbing installations there shall be paid to the Plumbing Inspector upon the issuance of every such permit the sum of one dollar ($1.00), plus twenty-five cents (25¢) for each fixture or trap proposed to be installed. Each connection requiring a trap shall be counted as a fixture.

"(b) The plumbing and drainage of all buildings, private and public, and all alterations and additions to drainage systems shall be executed in accordance with plans and specifications previously approved in writing by the inspector of plumbing, and suitable drawings of the said plumbing and

drainage shall be submitted by the master plumber and placed on file in the office of the Department of Health.

"(c) Blank abstracts of the plans and specifications of plumbing and drainage shall be furnished to the master plumber on application at the office of the department of health. Plans must be drawn legibly and old work shown in red, giving the size and kind of pipes, traps and water closets, fixtures, etc., to be used and must show the method of ventilating water closet apartments.

"(d) On all plumbing work in which a new connection is made with the public sewer, the master plumber must furnish the plumbing inspector with a copy of the sewer connection permit issued by the Department of Public Works, along with his plans and specifications."

And still another section which is involved is, in part, as follows:

"Section 99 of Chapter 27 of the Richmond City Code of 1937, as amended by ordinance approved March 14, 1942.

"* * * (g) Every person desiring to do work at the business of plumbing, as a journeyman plumber, within the limits of the City of Richmond, shall make written application to the board for examination for a license, which examination shall be made at the next meeting of the board or as soon thereafter as practicable. Said examination shall relate to the practical knowledge of the applicant as to plumbing, building drainage and plumbing, ventilation and sanitation, shall be practical as well as theoretical, and if the applicant shows himself competent and qualified to perform plumbing work, the said board shall cause its chairman and secretary to execute and deliver to the applicant a license authorizing him to do plumbing work when his license fee has been paid, as prescribed."

The bases upon which the petitioner claims that the said ordinances are invalid are that they are not clear, certain and definite, as is required by the law; that they bear no proper relationship to the public health and safety; and that the said sections are unconstitutional because discriminatory.

There was an agreed stipulation of facts. The Rountree

Corporation was organized for the purpose of conducting a retail furniture business in the city of Richmond. It desired to sell a line of household and kitchen appliances such as gas stoves, sinks, cabinets, washing machines, and other kindred appliances which are installed in kitchens and other parts of homes of its customers. In conjunction with the sale and installation of these items plumbing work was necessary. At first the corporation contracted for its plumbing work with plumbing firms in the city. This was found undesirable because it could not secure prompt plumbing service for its customers. It therefore set up its own department for the purpose of performing all of the plumbing work necessary to the installation of the various pieces of equipment sold by it. It employed upon a salary basis a licensed journeyman plumber who actually performed the physical work. From time to time, in order to conform to such installation as was desired by the customer, it was necessary to remodel and revise the existing plumbing in the home. In some instances the requirements of the customer exceeded the actual installation and remodeling and the corporation has from time to time furnished plumbing services of a repair nature in cases in which no sale of an appliance or facility was made.

All plumbing work performed by the corporation was done by a licensed journeyman plumber, certified as such by the authorities of Richmond.

The president of the corporation, in its behalf, prior to the issuance of any of the warrants, made verbal application to the plumbing inspector of the city for a license permitting the corporation to engage in the business of a plumbing contractor. The applicant was told that it would be necessary for the corporation to authorize a representative to take the examination to demonstrate his proficiency before a permit to engage in the business of plumbing contractor could issue, and that a license could not be obtained without a certificate from the plumbers' examining board as required by section 81 of chapter 27 of the city code of 1937, as amended.

Notwithstanding the failure of the defendant corporation to obtain the requisite certificate and license it proceeded to install plumbing in the city in violation of the provisions of the plumbing code.

On November 13, 1946, the corporation applied by letter for a certificate of proficiency so that it might obtain a license to engage in the plumbing business. The secretary of the plumbers' examining board replied stating that the request could not be granted since no representative of the corporation had applied for an examination. On November 16, 1946, the corporation again wrote calling attention to the fact that its representative held a journeyman's card, and asked if the representative was in good standing. It was replied that the representative was in good standing as a journeyman plumber but that he had not demonstrated his proficiency in laying out and supervising plumbing work as was required of a master plumber, and therefore the certificate could not be granted.

The corporation was not willing to submit any duly authorized representative for examination to determine his proficiency as required by the city code. Nevertheless, in violation of the code, and without obtaining a license or permit to engage in the plumbing business, the corporation performed certain plumbing work which is the basis of the present prosecution.

Certain forms promulgated by the plumbers' examining board of the city were introduced as exhibits. The secretary of the board testified that the city and its administrative officers have interpreted the term "plumbing contractor", used in the 1942 amendment to section 81 of chapter 27 of the code, as synonymous with the term "master plumber", since the date of the amendment; that the examination given to representatives of firms which desire to engage in the business of plumbing contractors is the same examination given to master plumbers; that the certificate given to the applicants who have demonstrated their practical and technical knowledge, proficiency and capacity to lay out and supervise plumbing work is the same certificate entitled

"Master Plumber's Certificate", filed as exhibit 3; that this is the certificate required as a condition precedent to obtaining a business license as a plumbing contractor; that the journeyman plumber's certificate, the form of which is exhibit 5, is given to applicants who pass the journeyman plumber's examination and who have demonstrated their practical and theoretical knowledge of plumbing, but that the journeyman examination differs from that given to applicants for the master plumber's certificate as the latter are examined in more detail on technical matters such as layout of work, pipe capacities, location of vents, etc.; that the journeyman plumber is the only person entitled to make a connection with a sewer, drain, soil, waste, or vent pipe, or gas or water pipe, or any pipe connected therewith; that the terms "master plumber" and "journeyman plumber" are well understood in the trade and that the former refers to persons engaged in the business of plumbing who lay out and supervise the work, while the latter perform the physical labor involved in the job; that the journeyman plumber must work for a master plumber or plumbing contractor or must himself hold a master plumber's certificate before engaging in plumbing work in the city.

He further testified that the work of a journeyman plumber must be laid out and supervised by a plumbing contractor or master plumber, and that plumbing contractors holding the certificate of proficiency in all plumbing jobs actually supervise the work in ninety per cent of all plumbing jobs in the city.

This witness further testified that before new plumbing, or alterations and additions to old plumbing installations can be made, an application for a permit must be filed with the plumbing inspector by a plumbing contractor on certain forms, copies of which are introduced as exhibits, and that the name of the representative who holds the master plumber's certificate is placed in the blank on the application form provided for the insertion of the master plumber's name; that the plumbing inspectors of the city inspect all plumbing work done in the city for which a plumbing

permit has been issued, and require the correction of all defective work; that the defendant corporation has never presented a representative to take the required examination for a plumbing contractor's certificate of proficiency, and that no such certificate has ever been issued.

One of the plumbing inspectors for the city testified that he checked the plumbing installation made by the defendant's agent, which was the basis for the issuance of two of the warrants, and found that it was defective, and that the corporation was so notified.

The petitioner contends that there is not contained in the ordinances any definition of the words "plumbing contractor", "master plumber", or "journeyman plumber", and, failing to define those terms, the ordinances are so vague, indefinite and uncertain that they are invalid.

It relies upon *Standard Oil Co. v. Commonwealth*, 131 Va. 830, at page 833, 109 S. E. 316, where it is written: "This contention is based upon the general rule that an ordinance of a regulatory nature must be clear, certain and definite, so that the average man may, with due care, after reading the same, understand whether he will incur a penalty for his action or not, and if not of this character it is void for uncertainty." This rule is substantially carried in 37 Am. Jur., Municipal Corporations, sec. 163.

Aside from the descriptive matter found in the ordinances themselves which would lead one to understand what was meant by the quoted words, plumbing was known to antiquity. The word "plumbing" is derived from the Latin *plumbum* (lead). The Americana (1938), Vol. 22, p. 256. There, long before we had plumbing, gas, and the modern water, heating and sewerage systems as we know them today, plumbing was defined. The definition then given is in many respects the same as that of today. In section 79 of chapter 27 of the plumbing code, plumbing is defined as the art of installing in buildings the pipes, fixtures and other apparatus for bringing in the water supply and removing liquid and water-carrying waste. Thus we have in the plumbing code a definition of the word plumbing.

A licensed journeyman plumber, under the ordinances, is one who as a journeyman plumber has passed an examination, as provided in the ordinances, which "shall relate to the practical knowledge of the applicant as to plumbing, building drainage and plumbing, ventilation and sanitation, (and) shall be practical as well as theoretical." That language of the ordinance is sufficient to define a journeyman plumber.

Likewise, the ordinances sufficiently define a plumbing contractor. See section 81(a). He is one who possesses the knowledge or capacity to lay out and supervise plumbing, and has passed a practical and theoretical examination on those subjects. If a firm or corporation desires to engage in the business, it must present a representative to take the same examination.

In addition to the foregoing considerations, specific legislative definition of certain words in an ordinance is not necessary when those words have a common accepted meaning. If we apply the rule stated in *Standard Oil Co.* v. *Commonwealth, supra,* it is perfectly obvious that the average man, reading the ordinances in question with care, would certainly understand whether he would incur a penalty for his action. In any event it does not lie in the mouth of the corporation president to say he did not know what was meant by the ordinances. He made verbal and written application for a license and he was informed of the requirements. He obtained full information on the subject before the violations, but refused to follow the information he had obtained. And still later, with full knowledge of what was meant by the ordinances, he permitted his corporation to conduct the business of plumbing contractor in violation of the law.

In 50 Am. Jur., Statutes, sec. 307, we find this clear statement of the law: "Legislative words derive vitality from the obvious purposes for which the statutes are enacted, and in the interpretation of a statute of ambiguous terminology, the proper course is to adopt that sense of the words which promotes in the fullest manner the object of the

statute. The general rule, as to this matter, is that the words of a statute should receive their ordinary acceptation and significance, where such construction is consonant, and not at variance, with the purpose of the statute, and does not thwart or defeat the same, or where it is not obvious from the statute that the evil to be suppressed, or the remedy to be advanced, requires that the construction be limited or enlarged. Especially should the court adhere to the primary and commonly accepted meaning of a word used in a statute where a departure therefrom would frustrate the object of the provision, or cause the provision to be in conflict with the purpose which the act was intended to accomplish. * * *"

A plumbing contractor's license alone is appropriate for a corporation which desires to perform the functions that are being performed by the petitioner. Those functions can only be performed by a representative who has qualified under the ordinance.

Since the amendment of 1942, those in charge of enforcing the plumbing code in the city of Richmond have construed the words "plumbing contractor" and "master plumber" to be one and the same. The testimony shows without contradiction that the questioned terms used in the ordinances are well understood in the trade and have a common meaning. A construction long placed upon statutes without protest from officials charged with their enforcement is entitled to great weight. See *McConkey* v. *Fredericksburg*, 179 Va. 556, 19 S. E. (2d) 682. And in *Virginia Elec., etc., Co.* v. *Commonwealth*, 169 Va. 688, 194 S. E. 775, we held that in doubtful cases the court will adopt that construction which administrative officers charged with the duty of enforcing a particular law have placed on such law where such construction has been acquiesced in by the legislative body and the public for a long period of time. A departmental construction of a statute is persuasive that it is the correct construction to be applied. *Batcheller* v. *Commonwealth*, 176 Va. 109, 10 S. E. (2d) 529.

Our conclusion is that the ordinances in question are not too vague to be enforced.

It is claimed that the ordinances are invalid because there is no proper relation between the work of a plumber or plumbing contractor and the public health and welfare which is generally essential as a foundation for a regulatory ordinance; that they serve no public purpose in relation to public safety, health, or morals, and cannot be justified under the police power, and that they are no more than the evidence of an attempt on the part of the city to regulate a legitimate business under the guise of public necessity.

There can be no substantial doubt that a city, under its police power, has the authority to regulate the activities of plumbers. In 41 Am. Jur., Plumbers, etc., secs. 1 and 2, the general rule is stated with clarity. From that authority it is seen that the argument that the business of plumbing bears no proper relation to public health and safety is generally denied. In paragraph 1, in part, it is said: "* * * These occupations or callings are of such character as to require study or training or exprience to qualify one to pursue them with safety to the public interests, and one can hardly question the power of the Legislature to impose such restraints and prescribe such requirements as it may deem proper for the protection of the public against the evils resulting from incapacity and ignorance. * * *"

But the petitioner contends that there is no basis for the regulatory ordinances because the plumbing contractor or his representative is not required to supervise the work of a journeyman and that after the certificate is issued to the contractor or his representative neither thereafter is required to perform any work. This contention is contrary to the intent and language of the ordinances. Section 82 (a) provides that no plumber is allowed to make any connection with a sewer without first having made written application to the inspector of plumbing and obtained a permit to do so. It is also provided that in order to defray the expense of checking plans, etc., a fee must be paid. Sub-section (b) provides that, "The plumbing and drainage of all build-

ings, private and public, and all alterations and additions to drainage systems shall be executed in accordance with plans and specifications previously approved in writing by the inspector of plumbing, and suitable drawings of the said plumbing and drainage shall be submitted by the master plumber and placed on file in the office of the department of health."

Other pertinent provisions appear in the ordinances which, along with those to which reference has been made, disclose the intent of the legislative body to have the plans and specifications for any and all work to be laid out and supervised by someone other than the journeyman who actually takes orders and performs the manual work. The person who is to lay out and supervise the work and who is to make the plans and specifications is a master plumber or a plumbing contractor or a representative of the plumbing contractor, if it is a firm or corporation, who has passed a master plumber's examination. This intent can be gathered from the plumbing code as a whole. We think that the code does bear a proper relation to the health and safety of the public, and that the business of plumbing is a fit and proper subject for municipal regulation.

Finally it is contended that the ordinances are unconstitutional because discriminatory. Just how they discriminate against the petitioner we are not told. Unless the petitioner is prejudiced by the discrimination, if any exists, it is not in position to challenge their constitutionality on that ground. *Grosso* v. *Commonwealth*, 177 Va. 830, 13 S. E. (2d) 285, and *Fairfax County* v. *Parker*, 186 Va. 675, 44 S. E. (2d) 9.

By inference, and from the type of cases relied upon by the petitioner, it might be implied that its position is this: That if a corporation or firm obtains a license under the ordinances to operate as a plumbing contractor, not only may the representative on whose examination the license was issued perform the work for the plumbing contractor, but, in addition, other members of the firm and agents of the corporation may also perform the work for the plumbing

contractor under the same license without first passing the examination. If this were true the operation of the ordinances might be unequal among the licensees and result in favoring the firms and corporations which are plumbing contractors over individual journeymen who operate alone as such. But this is not true in respect to the Richmond ordinances.

*State* v. *Gardner*, 58 Ohio St. 599, 51 N. E. 136, 65 Am. St. Rep. 785, 41 L. R. A. 689, is relied upon. This appears to be a leading case but, as we consider it, the statute there is distinguishable from the ordinances here. There, after deciding that the plumbing business is one which may be regulated in the public interest, the court held that the statute was invalid because discriminatory. The statute in that case provided that all plumbers and journeymen, before engaging in the business of plumbing, should be required to undergo an examination as to fitness and obtain a license. But the statute permitted other members of a firm to pursue the business where only one had procured such license, and other agents of a corporation were permitted to pursue the business where only the manager had procured such license. Under those circumstances it was held that the statute did not operate equally upon all of a class pursuing the calling under like circumstances. The statute was held invalid.

The Richmond ordinances are entirely different. No unlicensed person can perform the work of a plumber, and a license can only be obtained by taking and passing a satisfactory examination. When a representative of a plumbing contractor has successfully passed the examination and a license has been issued, he alone is the representative of the firm or corporation, if it be a firm or corporation, who is permitted to lay out and supervise plumbing work.

There are a number of other cases relied upon by the petitioner, among them, *Henry* v. *Campbell*, 133 Ga. 882, 67 S. E. 390; *Vicksburg* v. *Mullane*, 106 Miss. 199, 63 So. 412, and *State* v. *Benzenberg*, 101 Wis. 172, 76 N. W. 345. We have read and considered these cases and find that the

statutes and ordinances there construed were unlike the Richmond ordinances.

In *State* v. *Memphis*, 151 Tenn. 1, 266 S. W. 1038, the court was considering a State statute as well as the plumbing ordinance of the city of Memphis and held the statute discriminatory in that it permitted members of a firm to engage in actual plumbing work where only one member had taken the required examination. On the other hand, it examined the plumbing ordinance of Memphis with considerable care and considered the cases which have already been referred to. The city ordinance of Memphis was held not to be discriminatory on the ground that under the ordinance everyone performing plumbing work either as master plumber or as journeyman had to be licensed, including the manager of a corporation or the superintendent of a firm. Other members of a firm or employees of a corporation who had not successfully passed the examination were not allowed by the ordinance to perform any plumbing work. The situation there is quite similar to that presented by the ordinances of the city of Richmond.

Our conclusion is that the Richmond ordinances are not discriminatory. The judgment of the trial court is affirmed.

*Affirmed.*