**Alexandria**

JEROME W. FREY, JR.

v.

JUDITH B. FREY

No. 0362-91-4

Decided April 7, 1992

COUNSEL

James R. Hart (Dixon, Smith & Stahl, on briefs), for appellant.

Kathleen O'Brien (Anne E. Goodwin; Motes, Fite and O'Brien, on brief), for appellee.

OPINION

**COLEMAN, J.**—Jerome Frey, Jr. (husband) appeals the trial court's denial of his motion to terminate spousal support to Judith Frey (wife) based on the terms of their property settlement agreement. The parties agreed that the husband's obligation to pay the wife support would terminate upon "her cohabitation, analogous to a marriage, with another man." The husband contends that the court erred by interpreting the phrase, "cohabitation, analogous to a marriage," to require a showing that the wife's male companion had assumed the duty of providing financial support for the wife

in order to terminate spousal support. He also contends that the trial court erred by refusing to admit parol evidence to prove what the parties intended by including that provision in the contract. Finally, he argues that the evidence was sufficient to establish that the wife's relationship with her male companion constituted "cohabitation, analogous to a marriage" so that the trial court should have terminated his duty to pay spousal support.

We reverse the decision of the trial court because it was based on the erroneous ruling that the plain meaning of the phrase "cohabitation, analogous to a marriage" necessarily requires an agreement or arrangement between the parties in regard to financial support. Financial support is but one of a number of factors which may make a living arrangement "analogous to a marriage." The trial court did not err, however, in ruling that the contested phrase is unambiguous and its meaning does not depend upon what the parties intended by the terminology. Therefore, the trial court correctly ruled that parol evidence was not admissible. Nevertheless, because the trial court held that a relationship is analogous to a marriage only if cohabiting parties assume the responsibility of providing some financial support to one another, the trial court did not resolve all factual disputes necessary to decide whether the relationship was in other respects analogous to marriage. Therefore, we remand the case for further consideration to determine the facts and to decide whether, based upon those facts, the relationship was analogous to a marriage as hereinafter defined.

The husband and wife were divorced by a final decree entered on October 20, 1989. The final decree incorporated by reference the parties' property settlement agreement, which provided, in pertinent part, that the husband's obligation to pay spousal support would terminate upon the wife's "cohabitation, analogous to a marriage, with another man."

Some time later, the husband learned the former wife was having a relationship with John Jeffrey Hall. Hall had moved into the former wife's residence and had lived there with her for three months in 1989. During this period, Hall and the former wife had a sexual relationship. Hall paid her $150 per month for rent. After the husband filed his motion to terminate spousal support, the former wife and her paramour continued their romantic relationship, but Hall stopped living with her all the time. Hall continued

to spend three or four nights a week at her house, however.

The trial court, after an *ore tenus* hearing, denied the husband's motion to terminate spousal support, finding that the phrase "cohabitation, analogous to a marriage" meant that the wife's paramour had to have assumed financial support of the wife before the husband's spousal support obligation could be terminated.

■ The husband contends that the trial court erred in interpreting "cohabitation, analogous to a marriage" as encompassing a financial support component. "[O]n appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which readily can be ascertained by this court." *Fry v. Schwarting*, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987). Consequently, a reviewing court is not bound by a trial court's construction of disputed contract provisions. *Smith v. Smith*, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986).

■ The plain and unambiguous meaning of the phrase, "cohabitation, analogous to a marriage," as contained in the agreement, is that the cohabiting parties have agreed to live together permanently or for an indefinite period and to assume duties and obligations normally attendant with a marital relationship. *See Schweider v. Schweider*, 243 Va. 245, 415 S.E.2d 135 (1992). Although spouses are legally obligated to support a former spouse who is in necessitous circumstances, Code § 20-61, financial support of a spouse is not a condition that exists in all marriages. Thus, while contribution to support is a factor that must be considered, the lack of support or lack of an agreement concerning support does not mean that the relationship is not "analogous to a marriage."

The meaning of "cohabitation, analogous to a marriage" as a condition warranting termination of a former spouse's support obligation, as provided in this property settlement agreement, presents an issue that was recently considered in Virginia. *See Schweider*, 243 Va. at 248, 415 S.E.2d at 137. Courts in other jurisdictions also have interpreted similar language in property settlement agreements and have generally concluded that it has a precise legal meaning. Construing the phrase, "marriage-type arrangement," the Maryland Court of Appeals said that,

"[a]lthough the particular language, 'marriage-type arrangement,' may be unique, the concept which it embodies is not. Clauses of this type are not uncommon, either in separation agreements or statutes, and they routinely have been construed to envision nothing less than the functional equivalent of a marriage." *Fisher v. Fisher*, 75 Md. App. 193, 200-01, 540 A.2d 1165, 1168, *cert. denied*, 313 Md. 30, 542 A.2d 857 (1988). The Maryland court said that the phrase encompasses "a common residence which each party regards as his or her home, a common household to which each contributes, and a personal relationship that is more than casual and has a significant meaning to each." *Id.* at 202, 540 A.2d at 1169. The Oregon Court of Appeals said that "cohabitation" as used in the phrase, "cohabitation with a member of the opposite sex," means "a domestic arrangement between a man and a woman who are not married to each other, but who live as husband and wife, in that, for more than a brief period of time, they share a common domicile and living expenses and are sexually intimate." *In re Marriage of Edwards*, 73 Or. App. 272, 278, 698 P.2d 542, 547 (1985). "Cohabitation" as used in the phrase "continuous or continual cohabitation with an unrelated male" was defined by the Kansas Court of Appeals as meaning "a condition or status of the parties, a status resembling that of the marital relation. Cohabitation is not a sojourn, nor habit of visiting, nor even a remaining with for a time; the term implies continuity." *In re Marriage of Wessling*, 12 Kan. App. 2d 428, ____, 747 P.2d 187, 190 (1987) (quoting *Biltgen v. Biltgen*, 121 Kan. 716, 721, 250 P. 265, 267-68 (1926)). The Pennsylvania Superior Court construed the term, "cohabitation," as used in a statute delineating the conditions that justified the termination of spousal support, as requiring a finding that two individuals "reside together in the manner of husband and wife, mutually assuming those rights and duties usually attendant upon the marital relationship." *Miller v. Miller*, 352 Pa. Super. 432, 439, 508 A.2d 550, 554 (1986). "Cohabitation" as defined in *Black's Law Dictionary* is "to live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but necessarily dependent upon sexual relations." *Black's Law Dictionary* 260 (6th ed. 1990). In the *Schweider* case, our Supreme Court said "cohabit" means "to live together in the same house as married persons live together, or in the manner of husband and wife." 243 Va. at 248, 415 S.E.2d at 137 (quoting *Johnson v. Commonwealth*, 152 Va. 965, 970, 146 S.E. 289, 291 (1929)).

■ The language, "cohabitation, analogous to a marriage," as used in the Freys' property settlement agreement, might be unique, but the concept it represents and its plain meaning are not. Such language, like the phrase, "marriage-type arrangement," has been consistently interpreted by courts as encompassing both a permanency or continuity element and an assumption of marital duties. *See Fisher v. Fisher*, 75 Md. App. 193, 540 A.2d 1165, *cert. denied*, 313 Md. 30, 542 A.2d 857 (1988). Accordingly, we hold that the phrase, "cohabitation, analogous to a marriage," means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship. It involves more than living together for a period of time and having sexual relations, although those factors may be significant; "[i]t also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." *Schweider*, 243 Va. at 248, 415 S.E.2d at 137 (quoting *Petachenko v. Petachenko*, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986)). Consequently, by requiring a showing that the former wife's male companion must have assumed the duty of providing her some financial support, the trial court gave too narrow a meaning to the covenant. Although the trial court did properly consider contributing to financial support as a factor which tends to prove the assumption of duties or obligations attendant to marriage, other factors exclusive of support may be sufficient to establish that a relationship between parties is analogous to marriage.

■ Since the phrase, "cohabitation, analogous to a marriage," as previously shown, has a plain and unambiguous meaning, the trial court correctly excluded parol evidence. "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985) (citations omitted). Consequently, when construing the contract, the trial court did not err by refusing to admit parol evidence of the parties' intent.

Finally, the husband contends that under the proper construction of the covenant, the unrefuted evidence was sufficient to show as a matter of law that the former wife's relationship with her paramour constituted "cohabitation, analogous to a marriage" so that he is no longer obligated to pay spousal support. The evidence

showed that John Jeffrey Hall had moved into the former wife's residence and had lived with her for three months in 1989. During that time, they engaged in sexual relations. Hall paid her $150 per month rent. Hall was observed washing dishes at the residence. After the husband filed the motion to terminate spousal support, Hall moved out of the residence but continued to spend three or four nights a week at her house. Because the trial court construed the covenant so narrowly, it did not fully consider other factors, such as whether the parties intended to live together continuously, permanently or indefinitely and mutually assumed duties and obligations normally attendant to marriage. The trial court simply did not address whether Judith Frey and John Jeffrey Hall agreed or understood that they would live together permanently or indefinitely and that they would share a common household to which each would contribute either financially or by assuming duties and responsibilities normally attendant with a marital relationship. On this record, we cannot say, as a matter of law, that the relationship between Judith Frey and Hall was or was not "cohabitation, analogous to a marriage." Accordingly, because the facts necessary to a resolution of the case have not been resolved and because the trial court did not consider application of the correct legal principle, this is not a case in which the Court of Appeals can enter final judgment under Code § 8.01-681. *Compare Schweider*, 243 Va. at 250, 415 S.E.2d at 138.

Accordingly, we reverse the ruling of the trial court and remand the case for further consideration, in light of *Schweider*, to determine whether Jerome Frey is relieved of his contractual obligation to support Judith Frey because she cohabited with a man in a relationship analogous to a marriage.

*Reversed and remanded.*

Barrow, J., and Duff, J., concurred.