# CIRCUIT COURT OF ACCOMACK COUNTY

Robert Anderson Richardson

v.

Linda Marie Witt Richardson

November 30, 1998

Case No. (Chancery) 86CH226

By Judge Glen A. Tyler

The Court is called upon to decide in this case whether the Complainant, petitioner, will be permitted, pursuant to Va. Code Ann. § 20-109, as amended, to terminate or decrease periodic spousal support payments to his former spouse because of her cohabitation with another person.

Robert Richardson and Linda Richardson were divorced under a final decree entered in this Court on March 30, 1987. A written contract which, among other things, provided for periodic support payments, was incorporated in the decree. Monthly payments in the amount of $600.00 were agreed to be paid "so long as both Husband and Wife shall live or until such time as Wife remarries." It also provided that "this ... support ... is to enable Wife to make payments of $341.90 on ... a ... note secured by the parties' home ... ." and any increase in the interest rate over the term of the note.

By petition filed in this Court in this reinstated cause on September 4, 1998, Complainant, Robert Richardson, alleged that Respondent, Linda Richardson, has cohabited with one Ward Parker for several years, including the period of time from July 1, 1997, to the present. Respondent filed an answer denying any cohabitation at all. Respondent did not deny the allegation that the note had been paid in full. Complainant prayed for termination of or a decrease in the support obligation.

The first question to be decided is whether Respondent has been habitually cohabiting with another person in a relationship analogous to a marriage. The

evidence heard ore tenus in this Court on November 18, 1998, is clear and convincing that she has.

When the parties separated, Respondent continued to reside and even now resides in the parties' former marital home in Accomack County. Respondent and Ward Parker met in 1987 and started, in Parker's words, "going together" on Memorial Day, 1987. They began by going out to dinner. And it is uncontradicted that since 1990 Ward Parker has resided continually with her in her home up to the present time. He has had no other residence since establishing the residence with Respondent, though he maintained his former house until August of 1996.

Relevant facts regarding the question of cohabitation are as follows. Respondent and Mr. Parker have one telephone in the house that they both use, though it is registered in her name; Parker helps to the extent he can with household chores; Respondent prepares meals for Parker and herself; Respondent works six days per week as a postal route carrier, and Parker has retirement benefits from his former employment; they share household expenses by his doing the shopping and buying all groceries and her paying all other household bills; they watch TV together, travel together, visit family members from time to time together, and sometimes Respondent takes Parker to his doctor's appointments; they give each other gifts; they share responsibilities regarding their pets and have a sign at the entrance to their property with the names of themselves and their pets; no other person has resided with Respondent since her divorce from the Complainant.

The Respondent, Mrs. Richardson, contends that they sleep in separate bedrooms and do not cohabit in the sense that they do not maintain a sexual relationship. She emphasizes that she took Parker into her home because of his need for close care and attention due to his medical problems. But care during illness is something that devoted married couples do routinely. Parker has had heart surgery two times, several small strokes, and has diabetes. He moved into Respondent's home before his second heart surgery. She states it is good to have Parker in her home because he looks out for her also and makes her feel secure in what would otherwise be a lonely and sometimes frightening existence, but that also is similar to a marriage. She states that were it not for his medical problems, she would not have taken him into the home, that neither has much family, and they look out for each other. On the other hand, she points out that they have separate bank accounts, separate post office boxes, separate credit cards, and separate automobiles.

Ward Parker was in the military service, then was a Virginia State Police Trooper for twenty years, retiring in 1980. He was employed thereafter part-time as a security guard at the Community College from 1986 through 1996,

which includes the years of his residence with Respondent. He points out that *since* July 1, 1997, the pertinent statutory time frame, he and Respondent have had no sexual relationship. However, it is because of his medical problems that exist now that he and Respondent cannot have a sexual relationship.

Cohabitation has been defined in Virginia law sufficiently for these circumstances. Sexual relations are a factor in making the determination, but "matrimonial cohabitation" consists of more than sexual relations and does not necessarily depend upon them. *Schweider v. Schweider*, 243 Va. 245 (1992); *Frey v. Frey*, 14 Va. App. 270 (1992); *Black's Law Dictionary* (6th ed. 1990).

The Court finds by clear and convincing evidence that Respondent and Ward Parker have been for a number of years and are now cohabiting in a relationship analogous to a marriage. As petitioner argues, there is hardly anything Respondent and Parker have done or would do any differently if they had gone through a marriage ceremony.

Respondent argues that even if Respondent were cohabiting, the facts here to not fit the statute in that the relationship is not one *commencing* on or after July 1, 1997, since it commenced before that time. However, the 1997 amendment to Va. Code Ann. § 20-109 regarding cohabitation does not mean to exclude a relationship that commenced before July 1, 1997, only that there must be evidence that the cohabitation continued for at least one year, and one starts counting after July 1, 1997, not before.

Respondent argues that the Court, in this case, cannot terminate or decrease spousal support previously awarded by decree pursuant to the parties' contract because Chapter 604 of the 1998 Acts of Assembly has a paragraph 2 stating that the provisions of the Act apply only to petitions for modification arising from original suits filed on or after July 1, 1998. But that does not cover the 1997 Act and its amendment, which remains in subparagraph A of the present statute. It covers the 1998 amendments and primarily the modification provisions in subparagraph B, since we now have what is called rehabilitative spousal support that can be set for a defined duration.

Finally, the parties each refer in their arguments not only to the subject of termination of spousal support but to the subject of a decrease in support and the subject of manifest injustice as set out in the statute. First, there was little evidence produced by the Respondent regarding whether termination would constitute a manifest injustice, and certainly there was no proof arising to a preponderance of the evidence. And, second, there was little evidence regarding decrease as opposed to termination. Both parties mentioned the reference in the separation agreement that the spousal support was for the mortgage payment that is no longer an obligation of the parties. But the evidence does not address adequately what the Court has discretion to do, that

is, either terminate or decrease, and if it is to be decreased, then to what amount? At this point, it is clear from the evidence only that the support should be decreased by $342.00, reducing the support payment to $258.00, which the Court will order.

The Court has discretion under the law to terminate the support altogether or to leave the support at $258.00 or to decrease it further. Before exercising such further discretion, the Court would need to hear further evidence if the parties are so advised.