COURT OF APPEALS OF VIRGINIA

Present:    Judges Alston, Chafin and O'Brien

MICHAEL ALLEN LUTTRELL

MEMORANDUM OPINION[*] BY
v.        Record No. 1768-14-4          JUDGE ROSSIE D. ALSTON, JR.
                                         APRIL 21, 2015
SAMANTHA MARY JO CUCCO

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Charles J. Maxfield, Judge

(Anneshia M. Grant; Livesay & Myers, P.C., on brief), for
appellant. Appellant submitting on brief.

No brief or argument for appellee.

Michael Allen Luttrell (husband) appeals from the trial court's denial of his motion for

adjustment of spousal support. On appeal, husband contends that the trial court erred by

1) allowing wife's counsel to present the moving party's motion without allowing the moving

party to comment on or present evidence regarding the same; 2) making a ruling, prior to

evidence being presented, absent an appropriate preliminary motion; 3) sustaining wife's

objection to the introduction of the parties' property settlement agreement based on the parol

evidence rule; 4) accepting wife's argument based upon the dissenting opinion of Brennan v.

Albertson as persuasive authority upon which to make its ruling; 5) finding that Virginia

common law dictates that cohabitation can only occur between a man and a woman; 6) accepting

evidence regarding the statutory language of Code § 20-109(A) when there is an existing

voluntary agreement between the parties; and 7) awarding attorney's fees to wife. Finding no

error, we affirm the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I.  BACKGROUND[1]

On appeal, this Court reviews the evidence in the light most favorable to the party prevailing below, in this case wife.  Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).

So viewed, the evidence established that husband and wife were married on January 6, 1992.  On November 5, 2007, wife filed a complaint for divorce with the trial court.  Thereafter, the parties entered into a property settlement agreement ("PSA").  The PSA was later affirmed, ratified, and incorporated into the parties' final decree of divorce, granted by the trial court on November 6, 2008.  The parties' PSA includes the following provision at issue in this appeal:

> 8. SPOUSAL SUPPORT.  The Husband shall pay to the wife, as and for her support, the sum of Two Thousand Four Hundred and Fifty Dollars and No Cents ($2,450) each and every month, the initial payment to be made on the first day of the month following execution of this Agreement by both parties, and to continue in consecutive monthly installments on the first day of each month thereafter for a period of eight (8) years, without interruption.

> It is agreed, however, that payments hereunder shall in any event terminate after the payment due and owing on November 1, 2016, if not earlier terminated as a result of the death of either party, the remarriage of the wife, or as a result of action by the Court taken pursuant to [Code] § 20-109 . . . relative to cohabitation.

The PSA also addresses the basis for awarding attorney's fees in future actions taken under the agreement, stating that

> reasonable expenses incurred by a party in the successful enforcement of any of the provisions of this Agreement . . . whether through litigation or other action necessary to compel compliance herewith . .  shall be borne by the defaulting party. Any such expenses incurred by a party in the successful defense to

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

any such action shall be borne by the party seeking to enforce compliance.

On July 10, 2014, husband filed with the trial court a motion to adjust spousal support. In a supporting memorandum, husband alleged that he had recently discovered that wife had been cohabiting with and engaged to be married to another woman since at least November 24, 2012. Husband requested that the trial court terminate spousal support payments to wife and enter an order requiring wife to return the equivalent of the spousal support payments made to wife during the period of her cohabitation.

The trial court held a hearing on husband's motion to terminate spousal support soon thereafter, during which husband represented himself *pro se*. Due perhaps to husband's inexperience in court, wife's counsel initially presented the motion to terminate spousal support, notwithstanding that husband was the moving party. Wife's attorney began by stating that "[t]his is actually [husband's] motion . . . but what he's basically asking for is to terminate spousal support based upon cohabitation." Wife's counsel continued, stating that the parties' "PSA says that they have to cohabit pursuant to the statute [Code § 20-109(A)], so in a relationship analogous to a marriage for one year or more."[2] Citing Brennan v. Albertson, No. 2042-11-4, 2012 Va. App. LEXIS 240 (Va. Ct. App. July 24, 2012) (Felton, C.J., dissenting), wife's counsel asserted that only opposite-sex couples could cohabit pursuant to Code § 20-109(A). Because wife was living with another woman, wife's counsel argued that husband's motion to terminate spousal support based on wife's cohabitation should be denied.

In response to wife's counsel's statements, husband raised the following argument:

> The counsel for [wife] references this case [(Brennan v. Albertson)], and what she's actually referencing is the dissent in

---

[2] The parties' PSA was presented to the trial court, although it was not admitted into evidence and not included in the appendix on appeal.

this case. It clearly says right here, the General Assembly – in the decision, the General Assembly did not require the relationship to be identical to marriage. Instead, the legislature employed the term "analogous to marriage."

Code § 20-109, analogous is commonly understood to mean susceptible to comparison, either in general or in some specific detail or having a similar function, but differing in instruction or – structure or origin.

The really important point is the one that you made, which is that the Federal Courts ruled this Commonwealth of Virginia statute against same-sex marriage is invalid, as have a slew of Federal Courts across the United States. I find [wife's counsel's] reasoning stretching the imagination.

Husband also asserted that, when he signed the PSA, he understood the PSA applied to same-sex relationships, because "it was really [his] understanding and [his] belief for much of [their] marriage that this very situation would arise." Husband added that he was unaware "that there was a detailed case law and a dissent which reference[d] cohabit as a man and a woman." Wife then objected, contending that husband's testimony regarding his intent when signing the PSA was barred by the parol evidence rule. Following wife's objection, the trial court simply stated, "Uh-huh. Is there any Virginia case that specifically says, We adopt this term, 'this' meaning for the term 'cohabit'"?

At the close of the hearing, the trial court ruled from the bench that it would "grant the motion." Although accepting that "the Constitution may – may mandate that same-sex people have the right to get married has [nothing] to do with termination of spousal support," which is "just a different issue." "[Spousal support] terminates when you live in a situation similar to marriage, which obviously, same-sex people can do. However, you have to be cohabiting. And cohabiting requires different sexes. Motion is granted."

Because husband's request to terminate spousal support was the only motion then before the trial court, the trial court's oral ruling granting the motion engendered some confusion. When wife's counsel clarified with the trial court that the spousal support obligation was not

- 4 -

terminated, the trial court answered in the affirmative. Additionally, the trial court awarded wife attorney's fees, as the parties' PSA provision permitting attorney's fees was "broad enough to cover this [motion hearing]." After the hearing, the trial court entered a final order denying husband's motion "[u]pon consideration of the reasoning of Brennan v. Albertson, 2012 Va. App. LEXIS 240," because wife "lives with another woman and accordingly, cannot 'cohabit' within the meaning of [Code] § 20-109."

## II. ANALYSIS

### A. HUSBAND WAS NOT DENIED DUE PROCESS

Husband contends that the trial court violated his due process rights and permitted procedural error by permitting wife's counsel to present husband's motion to terminate spousal support. This assignment of error raises a question of law, which we review *de novo*. Zedan v. Westheim, 62 Va. App. 39, 53, 741 S.E.2d 792, 799 (2013).

Husband contends that the trial court denied him a procedural right that "'lies at the very foundation of justice,'" namely, the opportunity to be heard. Appellant's Br. at 9 (quoting Moore v. Smith, 177 Va. 621, 626, 15 S.E.2d 48, 49 (1941)). See Etheridge v. Medical Center Hospitals, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989) ("Procedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard."). According to husband, he was denied such an opportunity by the trial court, when the trial court permitted wife's counsel to present husband's motion to terminate spousal support. This error, husband contends, denied him an opportunity "to present evidence in support of his own motion . . . in contravention [of] due process of law and resulted in an improper [o]rder." Appellant's Br. at 11.

Husband was present and participated in the August 8, 2014 hearing on his motion to adjust spousal support.[3] To be sure, wife's attorney took the lead during the hearing. The record suggests that this owed in no small part to wife's counsel's comparatively greater courtroom experience. Wife's attorney even went so far as to present the context of husband's motion to adjust spousal support. But husband was nevertheless given an opportunity to be heard at the hearing. Indeed, husband asserted that the parties' PSA "references . . . [Code § 20-109,]" that "the legislature [in Code § 20-109] employed the term 'analogous to marriage,'" but "did not require the relationship to be identical to marriage," and, accordingly, "there was no reference [in the parties' PSA,]" at least in husband's "own mind," that cohabitation referred only to "a man and a woman." In fact, husband not only had an opportunity to be heard during the hearing on his motion to adjust spousal support, but he asserted during the hearing essentially the same position he now takes on appeal – that "cohabitation, analogous to a marriage" includes same-sex relationships. Given these circumstances, we hold that husband was not denied due process.

Husband also contends that the trial court committed procedural error when it permitted wife's counsel to present husband's motion to adjust spousal support. Husband argues that, as a result of this error, he was denied an opportunity to present evidence in support of his motion. Assuming without deciding that the trial court erred in permitting wife's counsel to present husband's motion, we find such error harmless. The only evidence husband sought to present at the hearing pertained to wife living with another woman, which wife conceded. More importantly, the trial court acknowledged this circumstance in its final order. See App. at 65 ("[Wife] lives with another woman and accordingly cannot cohabit within the meaning of the

---

[3] Husband does not contend that he was denied notice of the hearing. Nor could he: the August 8, 2014 hearing was on husband's motion to adjust spousal support.

- 6 -

[law]."). Because the issue before the trial court was a pure question of law – a point husband acknowledges on brief, see Appellant's Br. at 13 (stating that "the case before the trial court did not turn on an ambiguity in [the] contract but rather a question of law") – any perceived restriction on husband's ability to submit evidence in support of his motion was harmless.

### B.  THE TRIAL COURT DID NOT GRANT A MOTION TO STRIKE *SUA SPONTE*

Husband next contends that the trial court erred in making a ruling absent an appropriate preliminary motion. Husband asserts on brief that the trial court erred, as a matter of law, by granting a motion that was never made. Husband's reasoning is simple:  Because husband's motion to adjust spousal support was the only motion before the trial court, and because the trial court's final order denied husband's motion, husband presumes that the trial court's oral ruling "grant[ing] the motion" must have expressed the trial court's ruling on a motion to strike "that was never made." Id. at 12.

We disagree. As we have explained on numerous occasions, a trial court speaks through its written orders. See McMillian v. Dryvit Systems, Inc., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001). We therefore reject husband's argument to the extent it raises a conflict between the trial court's oral ruling and its written order. We regard the final order as embodying the complete disposition of the issues before the trial court. Here, the trial court's final order only addressed husband's motion to adjust spousal support.

### C.  HUSBAND'S RELIANCE ON PAROL EVIDENCE

Husband next contends that the trial court erred in sustaining wife's objection to the introduction of the parties' PSA, preventing husband from "present[ing] evidence regarding the intent of the parties in signing . . . the PSA."

Upon our review of the record, we conclude that the trial court did not express a ruling on wife's objection. At the hearing, husband described his thought process "[w]hen [he] signed" the

PSA agreement. According to husband, "[he] made sure that there was . . . no reference [in the PSA] to [cohabitation] having to be a man and a woman" because it was his "understanding and [his] belief . . . that this very situation would arise." Husband asserted that "[he] d[idn't] know what [he] could have done in the PSA" because he was unaware "that there was a detailed case law . . . [that] referenced cohabit as a man and a woman." Wife then interjected an "object[ion] based on [the] parol evidence [rule]." The trial court responded "Uh-huh," before immediately questioning whether any Virginia cases clearly define cohabitation. Finding no other evidence in the record to suggest that the trial court verbalized a ruling on wife's objection, we decline to interpret this idle utterance as manifesting the trial court's intent to sustain wife's objection, particularly when it is clear from the record that the trial court considered the parties' PSA at numerous points during the hearing.

### D. THE TRIAL COURT CORRECTLY RULED THAT SAME-SEX COUPLES CANNOT COHABIT PURSUANT TO CODE § 20-109

Husband contends that the trial court erred in holding that same-sex couples cannot cohabit within the meaning of Code § 20-109,[4] and denying husband's motion to adjust spousal support. This assignment of error raises an issue of statutory construction, which we review *de novo*. See Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). For the reasons that follow, we affirm the trial court.

---

[4] Code § 20-109(A) states, in relevant part,

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance . . . .

Before 1997, Code § 20-109 permitted termination of a spousal support award only "[u]pon the death or remarriage of the spouse receiving support." See 1994 Acts of Assembly, ch. 518. In 1997, the General Assembly amended Code § 20-109(A) to permit termination of a spousal support award "[u]pon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to marriage for one year or more." 1997 Acts of Assembly, ch. 241.

When the General Assembly amended Code § 20-109(A), it added to a body of law by the Supreme Court of Virginia as well as by this Court. Five years before the General Assembly's amendment to Code § 20-109(A), the Supreme Court of Virginia held that to cohabit "means 'to live together in the same house as married persons live together, or in the manner of husband and wife.'" Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992) (quoting Johnson v. Commonwealth, 152 Va. 965, 970, 146 S.E. 289, 291 (1929)). That same year, this Court held that the phrase "'cohabitation, analogous to marriage,' means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Frey v. Frey, 14 Va. App. 270, 275, 416 S.E.2d 40, 43 (1992). In the years since, neither the Supreme Court nor this Court has interpreted the phrase "cohabitation, analogous to marriage," as used in Code § 20-109(A), to apply to same-sex relationships. But see Brennan, 2012 Va. App. LEXIS 240, at *16 (affirming the trial court's determination that the wife's relationship with another woman was analogous to marriage, but explicitly declining to answer whether Code § 20-109(A) "applies or does not apply to same-sex relationships"); see also Stroud v. Stroud, 49 Va. App. 359, 379, 641 S.E.2d 142, 151 (2007) (reversing the trial court's conclusion that "same sex individuals may not cohabit in Virginia as a matter of law," as it pertained to "the contract

between husband and wife," but noting that the holding concerned only the contract between the parties and "not a statute defining . . . 'cohabitation'").[5]

When "'the General Assembly acts in an area in which this Court has already spoken, it is presumed to know the law as the Court has stated it and to acquiesce therein.'" McFadden v. Commonwealth, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986) (quoting Burns v. Board of Supervisors, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984)). In other words, we may presume the General Assembly intended the phrase "cohabitation, analogous to a marriage" to be understood in the meaning previously determined by the Virginia courts – as "a status in which a man and a woman live together continuously . . . mutually assuming duties and obligations normally attendant with a marital relationship." Frey, 14 Va. App. at 275, 416 S.E.2d at 43. In the absence of any action by the General Assembly addressing or altering this case law, we must conclude that the General Assembly intended this meaning when it amended Code § 20-109(A). We therefore affirm the trial court's determination that, pursuant to Code § 20-109, wife could not cohabit with another woman.

---

[5] In support of his argument, husband cites Bostick v. Bostick-Bennett, 23 Va. App. 527, 478 S.E.2d 319 (1996). In consideration of husband's argument on brief, however, we think husband intended to cite Bostic v. Schaefer, 760 F.3d 352 (4th Cir.), cert. denied, 135 S. Ct. 308 (2014), in which the Fourth Circuit concluded that Virginia's statutory ban on same-sex marriages was unconstitutional. While we are mindful of this opinion, see Saunders v. Commonwealth, 62 Va. App. 793, 804, 753 S.E.2d 602, 607 (2014) ("'[T]hough state courts may for policy reasons follow the decisions of the Court of Appeals whose circuit includes their state, they are not obliged to do so.'" (quoting Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965))), we find the issue of statutory construction presented on appeal distinct from the question raised in that case. We have not been asked here to assign a legal status to the relationship between wife and her partner, but only to determine the bargain struck by the parties as expressed in their PSA. Employing common tools of statutory construction to determine the legislature's intent as expressed in Code § 20-109(A), which provision the parties explicitly referenced in their PSA, we determine that the trial court did not err and affirm its judgment.

E.  THE TRIAL COURT CORRECTLY INTERPRETED THE PARTIES' PROPERTY SETTLEMENT AGREEMENT

Husband next contends that the trial court erred in accepting evidence regarding the statutory language of Code § 20-109(A) when the parties' PSA addressed the issue of cohabitation.  According to husband, the parties' PSA "allows for the termination of support upon the 'cohabitation with another adult,'" Appellant's Br. at 17, whereas Code § 20-109 permits "termination of support upon the payees habitual cohabitation with another 'person' in a relationship analogous to marriage," id. at 16.  Husband contends that this distinction reflects the parties' agreement that spousal support would terminate upon proof of wife's cohabitation with either a man or a woman.  Because the parties' PSA "prevails" over Code § 20-109, husband contends that the trial court erred in relying on the language of Code § 20-109.

We find no support for husband's contention.  Significantly, the parties' PSA permits the termination of spousal support only upon an *"action by the Court taken pursuant to [Code] § 20-109 . . . relative to cohabitation."*  Addendum to Appellant's Br. at 10 (emphasis added).  In other words, the parties agreed that Code § 20-109 would govern in any proceeding where husband alleged cohabitation as a basis to terminate wife's spousal support award.  Accordingly, we find that the trial court did not err in accepting evidence regarding the statutory language of Code § 20-109(A).

F.  THE TRIAL COURT DID NOT ERR IN AWARDING ATTORNEY'S FEES TO WIFE

Finally, husband contends that the trial court erred in awarding attorney's fees to wife.  Husband argues that the parties' PSA permits an award of attorney's fees only when "[a] party [incurs attorney's fees] in the successful enforcement or defense to enforcement of any of the provisions of [the] agreement."  Appellant's Br. at 17.  Because the provision of the parties' PSA authorizing the termination of spousal support was not self-executing and "require[d]

- 11 -

interpretation by [a] [c]ourt," id. at 18, husband contends that he "had no recourse other than to bring a court action . . . [and] [wife] is not entitled to an award of attorney's fees" simply because his motion to adjust spousal support was denied, id.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995).

> Thus, "it is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). "The trial court's interpretation of [a] PSA is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en banc*).

Here, the parties' PSA states, in relevant part,

> The parties agree that any reasonable expenses incurred by a party in the successful enforcement of any of the provisions of this Agreement, or in taking action as a result of the breach of this Agreement by the other party, whether through litigation or other action necessary to compel compliance herewith, or to cure such breach, shall be borne by the defaulting party. Any such expenses incurred by a party in the successful defense to any such action shall be borne by the party seeking to enforce compliance.

Addendum to Appellant's Br. at 18.

Husband filed with the trial court a motion to adjust spousal support, in which husband requested that the trial court terminate wife's spousal support award pursuant to the parties' PSA. Although husband characterizes his motion as an attempt to modify the PSA, see Appellant's Br.

- 12 -

at 17, we conclude, as did the trial court, that husband's action constitutes a clear attempt to enforce Paragraph 8 (Spousal Support) of the parties' PSA, which states that spousal support payments shall terminate "as a result of action by the Court taken pursuant to [Code] § 20-109 . . . relative to cohabitation." See Addendum to Appellant's Br. at 10. Because the parties' PSA awards costs "incurred by a party in the successful defense to any [enforcement] action," id. at 18, and wife prevailed before the trial court on her defense to husband's motion, we hold that the trial court did not err in awarding attorney's fees to wife.

While the parties' PSA permits an award of attorney's fees to a party "in the successful defense to any [enforcement] action," husband contends that he "had no recourse other than to bring a court action" against wife pursuant to the PSA. Appellant's Br. at 18. Husband reasons that, although the PSA terminates wife's spousal support award in the event she cohabits with another person, "[t]he termination of support is not self-executing and the basis upon which [husband] seeks to terminate said support requires interpretation by the Court." Id. Husband cites Stroud v. Stroud, 54 Va. App. 231, 677 S.E.2d 629 (2009), in support of this argument.

In Stroud, the husband unilaterally terminated spousal support payments to the wife upon the wife's cohabitation with another person. Id. at 236, 677 S.E.2d at 631. When the wife later filed a petition to enforce spousal support, the husband requested attorney's fees, asserting that the wife "failed to abide by the terms of the contract" by making a demand for spousal support that was not in conformance with the PSA. Id. In response, the wife argued that the "husband was not entitled to unilaterally modify the terms of the PSA and that if he sought to enforce the 'cohabitation clause, he should have applied to the trial court for adjudication of that issue.'" Id. We agreed with the wife and "conclude[d] [that the] wife was not in default by bringing the action to enforce the PSA." Id. In reaching this conclusion, we noted that

- 13 -

> The provision of the PSA regarding termination of spousal support was not a self-executing provision and that [the] husband was not entitled to unilaterally terminate spousal support payments without seeking entry of a proper court order. Once husband independently withheld support payments, [the] wife had no choice but to seek a judicial remedy and have the trial court determine if she was cohabiting in a situation analogous to marriage. Thus, we [found] that [the] wife's enforcement of the agreement was not a default, but a proper means of seeking recourse in what she believed was non-compliance with the PSA.

Id. at 239, 677 S.E.2d at 632-33.

Husband's reliance on Stroud is misplaced. Although we concluded in Stroud that the husband "was not entitled to unilaterally terminate spousal support payments without seeking entry of a proper court order," id. at 239, 677 S.E.2d at 632, we did not establish a bright-line rule that attorney's fees were inappropriate in such circumstances. Rather, we simply determined that the wife had not defaulted under the provisions of the PSA when she sought enforcement of the spousal support award, notwithstanding that she was then cohabiting with another person.

Here, although husband was required to seek a court order terminating spousal support payments, his motion to terminate spousal support was nevertheless an attempt to enforce a provision of the PSA – namely the paragraph permitting termination of spousal support payments upon "an action by the Court taken pursuant to [Code] § 20-109 . . . relative to cohabitation." Because husband failed in his efforts, and because wife successfully defended against that action, we conclude that the trial court did not err in awarding wife attorney's fees.

### III. CONCLUSION

For the reasons stated above, we find that the trial court did not err in denying husband's motion to adjust spousal support or in awarding wife attorney's fees. We therefore affirm.

Affirmed.