PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Millette, S.J.

MICHAEL ALLEN LUTTRELL

v. Record No. 150770

OPINION BY
JUSTICE WILLIAM C. MIMS
April 28, 2016

SAMANTHA MARY JO CUCCO

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether same-sex couples can "cohabit[] . . . in a relationship analogous to a marriage" for purposes of Code § 20-109(A). The appellant also asks us to vacate an award of attorney's fees assessed by the circuit court.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Michael Luttrell ("Luttrell") and Samantha Cucco ("Cucco") were married on January 6, 1992. They later separated, and Cucco filed for divorce on October 5, 2007. Subsequently, they executed a "Property, Custody, and Support Settlement Agreement" (the "PSA"). The PSA was affirmed, ratified, and incorporated into the final decree of divorce granted by the Circuit Court of Fairfax County on November 6, 2008.

Pursuant to the PSA, the divorce decree ordered Luttrell to pay monthly spousal support to Cucco for a term of eight years. However, the PSA provided further that the payments would terminate upon

> the death of either party, the remarriage of the wife, or as a result
> of action by the Court taken pursuant to § 20-109 of 1950 Code of
> Virginia, as amended, relative to cohabitation.

Also relevant to this appeal, the PSA contained a cost-shifting provision in the event of an enforcement action by one of the parties. That provision states:

> The parties agree that any reasonable expenses incurred by a party
> in the successful enforcement of any of the provisions of [the

PSA], or in taking action as a result of the breach of [the PSA] by the other party, whether through litigation or other action necessary to compel compliance herewith, or to cure such breach, shall be borne by the defaulting party. Any such expenses incurred by a party in the successful defense to any such action shall be borne by the party seeking to enforce compliance. "Reasonable Expenses" as referenced herein shall include, but not be limited to, counsel fees, court costs, and expenses of travel.

On July 10, 2014, Luttrell filed a motion for adjustment of spousal support in the Circuit Court of Fairfax County. In his motion, Luttrell alleged that Cucco was "engaged to be married" and had been "cohabiting continuously" with her fiancée for at least a year. Pursuant to the PSA, Luttrell sought a court order terminating his spousal support obligation on the basis of Cucco's alleged cohabitation. Luttrell also requested an order directing Cucco to refund "the equivalent of at least one year of Spousal Support payments."

At the hearing on Luttrell's motion, Cucco did not dispute the allegations. Rather, she contended that her relationship was with another woman, and therefore she was not "cohabiting" within the meaning of Code § 20-109(A).

The circuit court reasoned that the right to marry was distinct from the question of its authority to terminate spousal support pursuant to Code § 20-109(A). Citing the dissent in an unpublished opinion from the Court of Appeals, the circuit court concluded that only opposite-sex couples could cohabit for purposes of Code § 20-109(A).[1] Accordingly, the court denied Luttrell's motion and awarded Cucco attorney's fees pursuant to the cost-shifting provision in the PSA.

Luttrell appealed to the Court of Appeals, which affirmed the judgment of the circuit court in an unpublished opinion. Luttrell v. Cucco, Record No. 1768-14-4, 2015 Va. App.

---

[1] Brennan v. Albertson, Record No. 2042-11-4, 2012 Va. App. LEXIS 240, at *16-24 (July 24, 2012) (Felton, C.J., dissenting).

2

LEXIS 135 (Apr. 21, 2015). As relevant to this appeal, the court began its analysis by looking to the history of Code § 20-109, noting that "[b]efore 1997, Code § 20-109 permitted termination of spousal support only 'upon the death or remarriage of the spouse receiving support.'" In 1997, the General Assembly amended Code § 20-109(A) to authorize termination of spousal support "[u]pon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to marriage for one year or more."[2] Id. at *13 (citing 1997 Acts ch. 241.)

The Court of Appeals interpreted this provision in light of two cases decided five years prior to its enactment. First, the court identified a statement from this Court's opinion in Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992), which noted that previous case law had defined "cohabit" to mean "liv[ing] together in the same house as married persons live together, or in the manner of husband and wife." The court also cited Frey v. Frey, 14 Va. App. 270, 275, 416 S.E.2d 40, 43 (1992), which had construed a property settlement agreement providing for the termination of spousal support upon the former wife's "cohabitation, analogous to marriage, with another man." In that context, the court held that the phrase "cohabitation, analogous to marriage" meant "a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Id.

---

[2] In relevant part, Code § 20-109(A) provides:

> Upon order of the court based upon clear and convincing evidence
> that the spouse receiving support has been habitually cohabiting
> with another person in a relationship analogous to a marriage for
> one year or more . . ., the court shall terminate spousal support and
> maintenance.

3

Reasoning that the General Assembly was aware of these cases when it amended Code § 20-109(A) in 1997, the Court of Appeals concluded that the legislature intended the phrase "habitually cohabiting with another person in a relationship analogous to a marriage" to mean "a status in which a man and a woman live together continuously . . . mutually assuming duties and obligations normally attendant with a marital relationship." Therefore, it affirmed the circuit court's order denying Luttrell's motion for an adjustment of spousal support. After reviewing the PSA's cost-shifting provision, the Court of Appeals also affirmed that portion of the circuit court's order awarding attorney's fees to Cucco.

## II. ANALYSIS

### A. Code § 20-109(A)

Under the terms of the PSA, Luttrell cannot terminate his spousal support obligation on grounds of "cohabitation" until a court takes action pursuant to Code § 20-109. Thus, the parties effectively incorporated the provisions of Code § 20-109 with respect to "cohabitation" into the PSA, and agreed to be bound by the same. Accordingly, whether Luttrell can terminate his spousal support obligation on grounds of "cohabitation" depends on whether Cucco's relationship with another woman can constitute "cohabitation" for purposes of Code § 20-109(A). This presents a question of statutory interpretation.

We review questions of statutory interpretation de novo. Eberhardt v. Fairfax Cnty. Emps. Ret. Sys., 283 Va. 190, 194, 721 S.E.2d 524, 526 (2012). "The purpose for which a statute is enacted is of primary importance in its interpretation or construction." Virginia Elec. & Power Co. v. Board of Cnty. Supervisors, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983) (internal quotation marks and citation omitted). "If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind

4

the statute." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (collecting cases).

When interpreting a statute, "[t]he general rule . . . is that the words of a statute should receive their ordinary acceptation and significance, where such construction is consonant, and not at variance, with the purpose of the statute." Rountree Corp. v. Richmond, 188 Va. 701, 712, 51 S.E.2d 256, 260-61 (1949). We adhere to this rule because "[l]egislative words derive vitality from the obvious purposes for which the statutes are enacted." Id. at 711, 51 S.E.2d at 260. Thus, we favor a permissible interpretation that furthers rather than obstructs the statute's purpose. See Virginia Elec. & Power Co., 226 Va. at 388, 309 S.E.2d 311; Norfolk So. Ry. Co. v. Lassiter, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952) ("The statute should have a rational construction consistent with its manifest purpose, and not one which will substantially defeat its object.").

We begin our analysis by observing that the language of Code § 20-109(A) is gender neutral. The words "spouse" and "person" encompass individuals of either sex, and thus, the provision may be understood to apply to either same-sex or opposite-sex relationships.

We next examine the relevant case law. As the Court of Appeals recognized, the 1997 amendments to Code § 20-109 occurred against a backdrop of case law interpreting property settlement agreements that provided for termination of spousal support under certain circumstances. In Schweider, the Court interpreted a provision in a property settlement agreement stating that the husband's spousal support obligation would terminate upon the "wife's death or remarriage." 243 Va. at 246, 415 S.E.2d at 136. In turn, the agreement defined "remarriage" as "the wife's permanent cohabitation with a male as if to all appearances they were otherwise married." Id. In dictum, the Court stated that in another context it had defined

5

"cohabit" to mean "'liv[ing] together in the same house as married persons live together, or in the manner of husband and wife.'" Id. at 248, 415 S.E.2d at 137 (quoting Johnson v. Commonwealth, 152 Va. 965, 970, 146 S.E. 289, 291 (1929) (interpreting Code § 4545 (1924), which provided the punishment for lewd and lascivious cohabitation)). We also observed that "'matrimonial cohabitation . . . imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship.'" Id. (quoting Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986) (contrasting desertion with matrimonial cohabitation)). Turning to the facts of the case, the Court concluded that the former wife's relationship had the appearance of a "'remarriage' within the meaning and intent of the property settlement agreement." Id. at 250, 415 S.E.2d at 138.

In Frey, the Court of Appeals interpreted a property settlement agreement, which provided that the husband's spousal support obligation would terminate upon the wife's "cohabitation, analogous to a marriage, with another man." 14 Va. App. at 271, 416 S.E.2d at 41. After reviewing case law from other jurisdictions, the court held that the phrase in the parties' property settlement agreement, "cohabitation, analogous to a marriage," meant "a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Id. at 275, 416 S.E.2d at 43. The court explained further that a shared residence, a degree of intimacy, some financial support, and an assumption of duties normally associated with marriage are factors relevant to determining whether "a relationship between parties is analogous to marriage." Id.

Subsequent to these two decisions, the General Assembly added the language in Code § 20-109 that is at issue in the present case. See 1997 Acts ch. 241. When the legislation was

6

introduced, the proposed language would have limited its application to only opposite-sex

relationships, such as those at issue in <u>Schweider</u> and <u>Frey</u>:

> Upon the death<u>, cohabitation with a person of the opposite sex,</u> or
> remarriage of the spouse receiving support, spousal support shall
> terminate unless otherwise provided by stipulation or contract.

H.B. 1341, Va. Gen. Assem. (Reg. Sess. 1997) (offered Jan. 22, 1996) (new language indicated

by italics). However, the House Committee for Courts of Justice proposed an amendment in the

nature of a substitute that eliminated the prepositional phrase "of the opposite sex."

Accordingly, proposed subsection (C)[3] provided for the termination of spousal support

> upon order of the court based on clear and convincing evidence
> that the spouse receiving support has been habitually cohabiting
> with another person for a year or more.

H.B. 1341, Va. Gen. Assem. (Reg. Sess. 1997) (proposed on Dec. 20, 1996). Subsequently, the

Senate Committee for Courts of Justice proposed another amendment in the nature of a substitute

that adopted the gender-neutral phrase used by the House Committee, added the prepositional

phrase "in a relationship analogous to a marriage," and reorganized the subsections. H.B. 1341,

Va. Gen. Assem. (Reg. Sess. 1997) (proposed on Feb. 10, 1997). This version of the bill was

enacted as 1997 Acts ch. 241.

By declining to modify the word "person" with the phrase "of the opposite sex," the

General Assembly signaled its intention that "person" would include individuals of either sex.

The General Assembly clearly intended to extend the application of Code § 20-109(A) beyond

the circumstances of <u>Schweider</u> and <u>Frey</u>, both of which involved opposite-sex relationships, by

deliberately omitting "of the opposite sex" from the statute.

---

[3] The amendment also divided Code § 20-109 into subsections.

The fact that same-sex marriage was not legal in Virginia in 1997 is not relevant to this statutory analysis. As the Court of Appeals recognized in another case, "[a] relationship 'analogous to marriage' does not mean a 'marriage.'" See Stroud v. Stroud, 49 Va. App. 359, 378, 641 S.E.2d 142, 151 (2007) (interpreting the phrase "cohabitation with any person . . . in a situation analogous to marriage" in a property settlement agreement). Therefore, regardless of the legal definition of marriage in effect when this provision was enacted, there is no textual basis to interpret "a relationship analogous to marriage" as having precisely the same meaning as "a marriage." See Webster's Third New International Dictionary 77 (1993) (defining "analogous" as "showing an analogy or a likeness permitting one to draw an analogy: susceptible of comparison either in general or in some specific detail . . . having a similar function but differing in structure or origin). Rather, the analogy between the relationship in question and marriage directs courts to the factors identified in Frey as relevant to "establish[ing] that a relationship between parties is analogous to marriage." See 14 Va. App. at 275, 416 S.E.2d at 43.

Those factors reflect the purpose of Code § 20-109, which attempts to maintain the relative standing of the parties at the time of the initial award of support. Code § 20-109(A) recognizes that an individual who has entered a committed, financially interdependent relationship with a third person is no longer dependent upon his or her ex-spouse in the same manner as when the agreement was executed. Therefore, it provides a mechanism designed to prevent one former spouse from obtaining a windfall at the expense of the other after the recipient has entered such a relationship. See Frey, 14 Va. App. at 275, 416 S.E.2d at 43 (noting that a shared residence and financial support are two factors relevant to determining whether a relationship is analogous to marriage).

8

A contrary interpretation of Code § 20-109(A) would obstruct this purpose in the case of a receiving spouse who subsequently cohabits with a same-sex partner. Indeed, it would produce the following untenable result: two identically-situated individuals with identical spousal support awards would receive opposite treatment if one cohabits in a same-sex relationship and the other cohabits in an opposite-sex relationship. The individual in the same-sex relationship would continue to receive support while the individual in the opposite-sex relationship would not. We cannot conclude that the General Assembly intended such a result.

Accordingly, the Court of Appeals erred when it concluded that the General Assembly intended the phrase "habitually cohabiting with another person in a relationship analogous to a marriage" to refer only to opposite-sex relationships.

## B. Attorney's Fees

The circuit court awarded Cucco attorney's fees pursuant to the PSA, which states that "[a]ny [reasonable] expenses incurred by a party in the successful defense to any [enforcement] action shall be borne by the party seeking to enforce compliance." The Court of Appeals affirmed that award because Luttrell had filed a motion to adjust spousal support, which the court found was an attempt to enforce the PSA, and because it concluded that Cucco had prevailed on her defense to the motion. As we conclude that same-sex couples can cohabit for purposes of Code § 20-109(A), we find that Cucco has not prevailed on her defense to the motion at this time. Accordingly, we will vacate the circuit court's award of attorney's fees.

## III. CONCLUSION

For the reasons stated, we find that the Court of Appeals erred when it concluded that same-sex couples cannot "cohabit" for purposes of Code § 20-109(A). Therefore, we reverse the judgment of the Court of Appeals and vacate the award of attorney's fees. We remand the case

9

to the Court of Appeals with direction to remand the case to the circuit court for an evidentiary hearing consistent with this opinion to determine whether Cucco cohabited with her fiancée within the meaning of Code § 20-109(A), and for reconsideration of attorney's fees pursuant to the PSA at that time.

<u>Reversed, vacated and remanded.</u>